Filed 7/1/14  In re Estrella S. CA4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ESTRELLA S., a Person Coming Under the Juvenile Court Law. | D065358 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518401A) |
| v. | |
| CARMEN S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Carmen S. appeals an order denying her petition under Welfare and Institutions Code section 388[1] and terminating her parental rights in the juvenile dependency of her minor daughter, Estrella S. Carmen's petition sought the return of Estrella to her care and the extension of reunification services. Carmen contends the juvenile court erred in denying her petition because she established both changed circumstances and that Estrella's return would be in her best interests. Carmen further contends the juvenile court erred in finding that the beneficial sibling relationship exception did not apply to prevent termination of her parental rights. (§ 366.26, subd. (c)(1)(B)(v).) We conclude that the court did not abuse its discretion in denying Carmen's petition and that substantial evidence supports the juvenile court's determination that the beneficial sibling relationship exception did not apply. We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of four-day-old Estrella. At birth, Estrella and her mother Carmen tested presumptively positive for methamphetamines. Carmen acknowledged using methamphetamines the day before she gave birth to Estrella. Carmen also received no prenatal care for Estrella. The Agency concluded that Estrella had suffered, or was at substantial risk of suffering, serious physical harm or illness as a result of Carmen's failure to protect Estrella or provide for her care.

At the time of Estrella's birth, her alleged father, Miguel G., was in federal custody awaiting deportation. After his deportation, he resided in Tijuana, Mexico, and did not play a significant role in Estrella's dependency case. Carmen has two other children, six-year-old Daisy

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

P. and 13-year-old Edgar P., Jr., who are Estrella's half siblings. Daisy and Edgar were not part of the Agency's petition under section 300.

At Estrella's detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivision (b), and ordered that Estrella be detained in out-of-home care. At the jurisdiction hearing, the court sustained the allegations of the petition and declared Estrella a dependent of the juvenile court. At the disposition hearing, the court removed Estrella from Carmen's custody and ordered reunification services for Carmen. The court ordered supervised visitation for Carmen and Estrella's half siblings. Estrella was placed with her maternal aunt, Claudia S.

The services provided to Carmen included individual therapy, parenting education, and drug treatment. At the six-month review hearing, Carmen had not completed or made substantial progress with any of these services. The court described Carmen's progress with her case plan as "minimal." The Agency also had difficulty staying in contact with Carmen.

Although Carmen's participation in services had been unsatisfactory, the Agency recommended extending services for another six months based on Carmen's willingness to participate in services. The court ordered an extension of services and scheduled a 12-month review hearing.

Two months later, the Agency petitioned the court under section 387 to change Estrella's placement to foster care. The Agency discovered that Claudia had allowed Carmen to have unsupervised contact with Estrella, which the Agency had warned Carmen and Claudia about once before. Claudia had left Estrella with Carmen "most days" in the previous two months, including overnight stays. Carmen reported that she had cared for Estrella for days at a time since the beginning of Estrella's dependency, though Claudia denied that assertion. The court found the

3

Agency had made a prima facie showing on the petition, and it later sustained the allegations. Estrella was placed in a licensed foster home.

At the 12-month review hearing, the Agency recommended that Carmen's services be terminated. Carmen's attendance at services remained sporadic. She did not complete or make substantial progress in any of her case plan objectives. Carmen continued to miss scheduled drug tests (which are considered failures), although the drug tests she did complete were negative. The Agency opined, "The Agency is concerned about [Carmen's] recent behavior which includes not attending services, missing random drug tests, and the Agency's difficulties in making contact with [Carmen]. There are concerns that [Carmen's] behavior is due to drug use and/or untreated mental health issues." The Agency was also concerned that Carmen did not want Estrella in her care. Given Estrella's age and vulnerability, the Agency believed she would suffer a substantial risk of neglect were she returned to Carmen.

The court found that Carmen had not made substantial progress in her case plan, that returning Estrella to Carmen's care posed a substantial risk of detriment, and that termination of Carmen's services was appropriate. The court scheduled a selection and implementation hearing under section 366.26.

In advance of the selection and implementation hearing, Carmen filed a petition under section 388 seeking modification of the court's order. Carmen requested that the court return Estrella to her care or, in the alternative, that the court order further reunification services. Carmen argued that she was participating in therapy, drug treatment, and parenting classes. Carmen contended that she could provide a safe home for Estrella and that Estrella should enjoy the benefit of living with her half siblings Daisy and Edgar. The court deferred consideration of Carmen's petition until the selection and implementation hearing.

4

The selection and implementation hearing occurred six months after the 12-month review hearing. The Agency recommended that Carmen's section 388 petition be denied, that Carmen's parental rights be terminated, and that adoption be ordered as Estrella's permanent plan. The Agency pointed out that Carmen still had not completed drug treatment or parenting education. While Carmen continued to test negatively for drugs, she was terminated from her drug treatment program again for lack of attendance. The Agency did not believe that Carmen would be able to provide a safe and stable home for Estrella. The Agency's social worker opined that Estrella was adoptable based on her young age, her good health, and her sociability. Although Estrella had recently been placed in a new foster home, her new foster caregivers were willing to adopt her.[2] In addition, there were 108 approved adoptive families willing to adopt a child with Estrella's characteristics.

Arlene Dalton, a marriage and family therapist, testified at the hearing. Dalton treated Carmen for five months as part of Carmen's reunification services. After Carmen's services were terminated, Dalton treated Carmen for a further four months. Dalton described Carmen's treatment goals as "[i]ncreas[ing] knowledge and understanding of parenting techniques, maintaining sobriety and maintaining being clean, education about developmental characteristics of a child [Estrella's] age, [and] increasing awareness of how to be empathetic in putting her child first." Dalton believed that Carmen had met all of her treatment goals, and she had no concerns about Carmen's ability to parent a child. On cross-examination, however, Dalton testified that she did not know that Carmen stopped attending drug treatment. Dalton also testified that she did not

---

[2] Estrella was removed from her first foster home because another child in the home had unexplained bruising on his face. At the time of the selection and implementation hearing, the Agency's investigation of the cause of the bruising was ongoing.

discuss Carmen's alcohol use or focus on drug treatment in her therapy. Dalton had never observed Carmen interacting with Estrella.

Carmen's parenting educator, Miriam Sanchez, also testified. Sanchez had been providing in-home parenting education to Carmen for six months. Carmen did not complete any of the parenting curriculums that Sanchez provided. Carmen's lack of progress was caused by her inconsistent attendance at the in-home sessions. At the time of the hearing, Carmen had participated in 15 sessions and missed 13 sessions. Sanchez testified that she was unsure whether Carmen could keep a young child safe in her care.

Daisy testified in chambers. Daisy had weekly visits with Estrella. Daisy wished she could see Estrella more and that Estrella could live with her. Daisy said she would be sad if her visits with Estrella stopped. Edgar testified as well. Edgar attended the family's weekly visits with Estrella, which he enjoyed. Edgar wanted Estrella to be returned to Carmen. He said "we all love her and we miss her." However, Edgar said he did not think Estrella recognized him on the visits. He said he was "a little bit" close to Estrella.

Two Agency social workers responsible for Estrella also testified. Jose Santana, part of the Agency's adoptions department, opined that Carmen had not shown changed circumstances sufficient to support her petition under section 388. Santana believed that Carmen had not addressed her past drug use, which was the main protective issue that brought Estrella to the Agency's attention. Carmen's visits with Estrella were pleasant and appropriate, but Carmen did not occupy a parental role in Estrella's life. Estrella did not have a problem separating from Carmen (or her half siblings) at the end of the visits Santana observed.

Santana believed that Daisy had a relationship with Estrella. However, from Estrella's point of view, Santana did not believe Estrella had a relationship with Daisy or Edgar. Estrella

6

had never lived with them and did not have any significant shared experiences with them. Santana did not think the loss of contact with Daisy and Edgar would be significant for Estrella. Moreover, the benefits of adoption would outweigh any such loss.

The second Agency social worker, Liliana Castro, addressed Daisy's and Edgar's relationship to Estrella as well. After the Agency filed its petition under section 300 for Estrella, Carmen agreed to a voluntary case plan for Daisy and Edgar. The voluntary case was terminated based on Carmen's failure to participate in services and the Agency's difficulty communicating with her. Later, the Agency investigated Daisy's and Edgar's welfare again, and the court ordered the Agency to file petitions under section 300 for them. While the Agency had concerns about Carmen's ability to parent Edgar and Daisy, it did not ultimately recommend that the court assume jurisdiction over them. The Agency's petitions were subsequently dismissed.

In her testimony, Castro explained why the Agency believed that Daisy and Edgar did not need protection whereas Estrella did. Castro said that Estrella's need for constant care, and her lack of connections to individuals outside the home, placed her at a higher risk of harm from neglect. Moreover, while Daisy and Edger denied seeing Carmen use drugs, Estrella tested positive for methamphetamines at birth. Castro also found out that Daisy, Edgar, and other family members had not been forthcoming about protective issues, including Estrella's unsupervised stays in Carmen's home. This lack of candor further increased the risk to Estrella.

During her work with Carmen's family, Castro had concerns that Carmen continued to use drugs. Carmen could not provide any reason why she was unable to attend and complete services and why she failed to maintain contact with the Agency. Carmen also made inconsistent statements regarding her past drug use.

7

After hearing the evidence and argument, the court denied Carmen's petition under section 388. The court did not believe Carmen had shown a change in circumstances because she still had not completed drug treatment. The court discounted the testimony of Arlene Dalton, Carmen's therapist, since her opinion was based on Carmen's self-reported circumstances and not the circumstances observed by social workers and others in the case. Citing Carmen's failure to complete her parenting classes, the court also found that that Estrella's best interests would not be served by modifying the court's prior order.

The court further found that Estrella was adoptable and that no exception to adoption had been established. As to the sibling relationship exception under 366.26, subdivision (c)(1)(B)(v), the court explained that Carmen had not shown that Estrella had any particular bond with her siblings. Estrella had never lived with Daisy or Edgar or had any opportunity to form a significant sibling relationship. The court found that adoption was in Estrella's best interests, terminated the parental rights of Carmen and Miguel, and ordered adoption as Estrella's permanent plan. Carmen appeals.

## DISCUSSION

### I

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) "If the petition filed under section 388[, subdivision] (a) . . . states a change of circumstance or new evidence and it appears that the best interest of the child, nonminor, or nonminor dependent may be promoted by the proposed change of order or termination of

8

jurisdiction, the court may grant the petition . . . ."  (Cal. Rules of Court, rule 5.570(e)(1); see also *In re Amber M.* (2002) 103 Cal.App.4th 681, 685 (*Amber M.*).)

The child's best interests are determined, in part, "by the seriousness of the problem leading to the dependency and the reason for its continuation; the strength of the parent-child and child-caretaker bonds and the time the child has been in the system; and the nature of the change of circumstance, the ease by which it could be achieved, and the reason it did not occur sooner." (*Amber M., supra*, 103 Cal.App.4th at p. 685.)

"[T]he Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in a prior reunification order."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)  "[S]ection 388 really is an 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528 (*Kimberly F.*), italics omitted.)

However, "[a]fter termination of services, the focus shifts from the parent's custodial interest to the child's need for permanency and stability."  (*Amber M., supra*, 103 Cal.App.4th at p. 685; see also *In re A.S.* (2009) 180 Cal.App.4th 351, 358.)  "A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of the focus in determining the ultimate question before it, that is, the best interest of the child."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"The determination of whether to change an existing order is 'committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.'  [Citation.]  An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd

determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*Amber M., supra*, 103 Cal.App.4th at pp. 685-686.) "The parent requesting the change of order has the burden of establishing that the change is justified." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703; see also *In re Marilyn H., supra*, 5 Cal.4th at p. 309.)

Significantly, Carmen does not challenge the court's findings at the 12-month review hearing directly. Instead, Carmen alleges changed circumstances based on her negative drug tests, the Agency's opinion that Daisy and Edgar did not warrant dependency, the ability of family members to monitor Carmen's care of Estrella, her completion of individual therapy, and Estrella's move to a new foster home. We conclude that the court was well within its discretion to determine that these allegations were either not changes at all or not changes sufficient to grant Carmen's section 388 petition.[3]

"Not every change in circumstance can justify modification of a prior order. The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate." (*In re S.R.* (2009) 173 Cal.App.4th 864, 870 (*S.R.*).) Here, the principal cause of Estrella's dependency case and its continuation was Carmen's unresolved drug problem. Although Carmen was not truthful at the beginning of the case, she eventually admitted to being a regular drug user. During the reunification period, Carmen consistently missed drug tests and failed to complete any drug treatment program. At the time of her petition under section 388, Carmen had been terminated from her drug treatment program again for nonattendance. A

---

[3]     Because the court held a hearing on the merits of Carmen's petition, Carmen's focus on the standard for holding such a hearing is misplaced. (See *In re Lesly G.* (2008) 162 Cal.App.4th 904, 912 [juvenile court failed to hold required hearing]; *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798-1799 [juvenile court erred by summarily denying petition without hearing].)

"parent who loses custody of a child because of the consumption of illegal drugs and whose compliance with a reunification plan is incomplete" is unlikely ever to "show a sufficient change in circumstances to warrant granting a section 388 motion." (*Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9; see also *Amber M., supra*, 103 Cal.App.4th at p. 686.)

The fact that Carmen continued to have negative drug tests was not a genuine change. Carmen had consistently negative drug tests before, but her failure to complete randomly scheduled tests indicated a continued problem. Additional negative tests, with no showing that Carmen had in fact completed drug treatment, did not demonstrate that Carmen's drug problem was resolved. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 ["Although parents were exerting themselves considerably to improve [by completing a number of drug treatment and parenting programs], they did not demonstrate changed circumstances."]; see also *In re Marcelo B., supra*, 209 Cal.App.4th at p. 642 ["Father's participation in 12-step meetings, completion of a substance abuse program and attendance at parenting classes was not prima facie evidence of a change in circumstances because Father had already received extensive treatment for his alcoholism."].)

Based on Carmen's lack of participation in services, her failure to complete random drug tests, and her inability to stay in contact with the Agency, the Agency had legitimate concerns that Carmen continued to have a drug problem. The evidence submitted at the hearing did not establish any change in circumstance showing that Carmen's drug problem had, in fact, been resolved. Carmen had not completed drug treatment; instead, she had been terminated again based on her lack of attendance. Carmen's showing was therefore insufficient. (*Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9; see also *Amber M., supra*, 103 Cal.App.4th at p. 686.)

11

The remaining changes alleged by Carmen are much less significant because they do not address Carmen's drug problem. (See *S.R., supra*, 173 Cal.App.4th at p. 870.) The circumstances of Daisy and Edgar, older children who had never been the object of abuse or neglect, were materially different from Estrella. Estrella had tested positive for drugs at birth and would require Carmen's constant care. Estrella did not age out of this requirement in the intervening six months between the 12-month review hearing and the hearing on Carmen's section 388 petition. Moreover, contrary to Carmen's suggestion, the maternal grandmother had already moved next door to Carmen by the time of the 12-month review hearing and her role was considered then. Neither the grandmother's move nor Daisy's and Edgar's residence with Carmen constitutes a change under section 388.

Carmen's completion of individual therapy and Estrella's placement in a new foster home were changes in fact, but they have little bearing on Carmen's ability to safely care for Estrella given the protective issue here that gave rise to Estrella's dependency. The court was entitled to discount the testimony of Carmen's therapist based on her admissions that she did not know Carmen's drug treatment had been terminated and that she had never observed Carmen interacting with Estrella. Moreover, the fact that Estrella had been placed in a new foster home did not address the reasons why the court made its prior order continuing Estrella's dependency and scheduling a selection and implementation hearing. (See *S.R., supra*, 173 Cal.App.4th at p. 870.)

Even considering the changes alleged, Carmen also has not shown that the juvenile court abused its discretion by finding that returning Estrella to Carmen would not be in Estrella's best

interests.[4]  (See *Kimberly F., supra*, 56 Cal.App.4th at p. 529.)  Carmen points to her completion of individual therapy, her attitude towards services, Estrella's alleged bond with Edgar and Daisy, evidence that Carmen appropriately cared for Estrella during visits, and Estrella's alleged lack of connection to her new foster caregivers.  Carmen's arguments are unpersuasive because they again ignore the main protective issue here:  Carmen's drug problem.  (See *Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9; see also *Amber M., supra*, 103 Cal.App.4th at p. 686.)

Carmen also does not account for our standard of review on appeal.  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' "  (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319.)  Even if the evidence Carmen cites would support a decision to return Estrella to Carmen, Carmen has not shown that the juvenile court's contrary decision was unreasonable in light of other facts, including Carmen's failure to complete drug treatment and parenting education.  Indeed, Carmen's parenting educator was unsure whether Carmen could safely care for a young child like Estrella.  We therefore find no abuse of discretion.

II

"If the court determines, . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption."  (§ 366.26, subd. (c)(1).)  An exception to this general rule applies if "[t]he court finds a compelling reason for determining that termination would be detrimental to the child . . . ."  (*Id.,*

---

4      While Carmen's petition under section 388 sought Estrella's return to Carmen or extension of services, Carmen argues on appeal only that the court's failure to return Estrella to Carmen's care was error.

subd. (c)(1)(B).)  This exception may be found where "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."  (*Id.*, subd. (c)(1)(B)(v).)

"The sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption."  (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.)  "At this stage of the dependency proceedings, 'it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home.'  [Citation.]  The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption."  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)

"To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child.  Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended.  If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship."  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952, fn. omitted.)

14

Carmen and the Agency agree that we review the juvenile court's order for sufficiency of the evidence.5 "A sufficiency of the evidence standard of review applies to the sibling relationship exception. [Citation.] 'On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.' [Citation.] The appellant has the burden of showing that substantial evidence does not support the court's finding." (*In re D.M.* (2012) 205 Cal.App.4th 283, 291.)

Here, the evidence showed that Estrella only had limited contact with Daisy and Edgar. She was detained a few days after birth and never lived in Carmen's home. Although Carmen did care for Estrella at times, contrary to the Agency's rules and the court's orders, there was little evidence of Estrella's contact with Daisy and Edgar as a result of that care. In any event, after Estrella's removal from her aunt Claudia's care, Daisy and Edgar only had weekly supervised visits with Estrella. We therefore disagree with Carmen that the evidence showed that Daisy and Edgar were "constant threads" in Estrella's life.

While Daisy may have felt some bond with Estrella, Daisy's feelings are relevant only as a proxy for any bond that Estrella might have felt. (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 822-823.) "[T]he sibling relationship exception permits the trial court to consider possible detriment to the child being considered for adoption, but not a sibling of that child." (*In re Celine*

---

5       Carmen notes that a few courts have applied an abuse of discretion standard (see, e.g., *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351) or a hybrid standard (see, e.g., *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314) to juvenile court findings that an exception to adoption did not apply. Carmen nonetheless urges that we apply the substantial evidence standard here. We therefore decline to address this potential conflict. Moreover, as *In re Jasmine D.* notes, there is no practical difference between the two standards in most cases. (*In re Jasmine D.,* at p. 1351.) Applying an abuse of discretion standard or a hybrid standard here likewise would not alter our decision in this case.

15

*R., supra*, 31 Cal.4th at p. 54.) Estrella's own feelings were less clear. While Estrella appeared to enjoy her visits with Daisy and Edgar, she did not appear attached to them and did not show any signs of distress when the visits ended. Daisy and Edgar were also older than Estrella, and Edgar was having difficulties at home. Edgar understandably wanted Estrella to return to Carmen's care, but he admitted that he was only "a little close" to Estrella. Significantly, Edgar did not think Estrella recognized him during visits.

The evidence supports the juvenile court's finding that no sibling bond existed between Estrella and Daisy or Edgar. Even if such a bond had existed, the evidence supports the court's finding that the benefits of maintaining such a bond would not outweigh the benefits of adoption. "In enacting this exception, the legislature was concerned with preserving long-standing relationships between siblings which serve as anchors for dependent children whose lives are in turmoil." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.) This situation is not presented here.

Carmen argues that Estrella shared common experiences with Daisy and Edgar, that Estrella spent substantial and meaningful time in Carmen's home, and that Estrella was bonded to her siblings. Carmen's arguments again fail to account for the applicable standard of review. Carmen focuses on evidence and inferences contrary to the juvenile court's order, which we may not credit. (See *In re D.M., supra*, 205 Cal.App.4th at p. 291; see also *In re L.Y.L., supra*, 101 Cal.App.4th at p. 947 ["[W]e draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion."].) Carmen additionally points out that Estrella's foster caregivers had offered to maintain Estrella's visits and that their offer would be unenforceable if Estrella were in fact adopted. But, given the other evidence in the record, the caregivers' offer (and its validity) has little bearing on whether the

16

juvenile court had sufficient evidence before it to determine that the sibling relationship does not apply.  The evidence supports the juvenile court's order.

## DISPOSITION

The order is affirmed.


                                                                                                  IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.


17