180 Cal.App.4th 351 (2009)
In re A.S. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
JOSEPH S., Defendant and Appellant.
No. D054951.
Court of Appeals of California, Fourth District, Division One.
December 17, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*354 Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.
Julie E. Braden, under appointment by the Court of Appeal, for Minors.

OPINION
HUFFMAN, Acting P. J.
Joseph S. appeals orders terminating parental rights to his children under Welfare and Institutions Code section 366.26.[1] He also appeals an order summarily denying his petition for modification under section 388. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND
In April 2006 the San Diego County Health and Human Services Agency (the Agency) initiated dependency proceedings on behalf of two-year-old A.S. and eight-month-old P.S. (together, children) when their mother, Rachel R., was arrested on drug charges. Rachel was pregnant and admitted recent methamphetamine use. She had a history of substance abuse.
Rachel alleged the children's father was Joseph S.[2] Rachel stated Joseph was present at the hospital when the children were born. He lived with A.S. from June 2003 to February 2005, and with A.S. and P.S. from July to November 2005.
The social worker spoke with Joseph on April 10, 2006, two days before the detention hearing. Joseph was living in a hotel. He did not disclose his telephone number or address to the social worker. Joseph said he was not in a position to care for the children. The social worker informed Joseph about the detention hearing. He did not appear.
*355 The children were detained with maternal relatives (caregivers). Joseph visited the children twice in the caregivers' home. He did not contact the social worker, who did not know his whereabouts. The Agency initiated a parent search for him.
Joseph did not appear at the jurisdiction/disposition hearing. The court made a true finding on the section 300 petitions, removed the children from parental custody and ordered a plan of reunification services for Rachel.
When Rachel was released from custody in July 2006, she entered a residential treatment facility. She gave birth to a daughter (sibling or sister) in September. The sibling was adjudicated a dependent and placed with a maternal relative.
The Agency initiated a second parent search for Joseph in September 2006. He was not located.
In May 2007 the court placed the children and sister with Rachel, who then moved into the caregivers' home. In August Rachel tested positive for methamphetamine. When Rachel relapsed a second time in December, the Agency detained the children (and their sister) with the caregiver and filed section 387 petitions on their behalf.
In February 2008 the Agency located Joseph in local custody. He had been arrested for vehicle theft, possession of a controlled substance and driving with a suspended license. Joseph appeared in dependency court for the first time on February 13.
Joseph's relationship to the children and sister was confirmed by paternity testing. The March 27, 2008, minute orders state the court amended the section 300 petitions to reflect Joseph's status as A.S.'s presumed father under Family Code section 7611, subdivision (d), and his status as P.S.'s biological father.[3]
The parties reached a settlement at the section 387 proceedings in June 2008. The court found by clear and convincing evidence that return of the children to Joseph and Rachel would create a substantial risk of detriment to the children's physical and emotional well-being (detriment finding or finding of detriment). The court terminated reunification services and set a section 366.26 hearing to coincide with the scheduled review hearing in the sibling's case.
*356 The contested section 366.26 hearing was held April 10, 2009. Joseph filed a section 388 petition (petition) the same day, seeking reunification services or a continuance of the section 366.26 case until he reunified with the children's sister. After presentation of Joseph's prima facie case, the court denied his request for an evidentiary hearing on the merits of the petition. The court proceeded to the section 366.26 hearing and admitted in evidence the Agency's report dated March 16, 2009, and attachment. The social worker testified. Joseph, Rachel and the children did not present affirmative evidence.
In addition to the underlying facts described above, we summarize the evidence relevant to the issues raised on appeal, keeping in mind we view the evidence in the light most favorable to the prevailing party. (Zagami Inc. v. James A. Crone, Inc. (2008) 160 Cal.App.4th 1083, 1096 [74 Cal.Rptr.3d 235], citing Jessup Farms v. Baldwin (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813].)
The social worker reported that the children, then five and three years old, were happy, healthy and well adjusted. The caregivers were willing to adopt the children. The Agency had also identified other families willing to adopt a sibling group similar to A.S. and P.S.
The social worker observed approximately 10 visits between Joseph and the children (and sister) from September 2008 to February 2009. A.S. was affectionate with Joseph. At the end of one visit, she clung to Joseph and cried. A.S. looked forward to her visits with Joseph and asked to see him.
Joseph tried to engage P.S. but she refused to talk to or play with him. P.S. cried when Joseph sat her on his lap. She enjoyed playing in the park with her siblings. The social worker intervened when P.S. and her sister ran to a secluded area in the park and did not respond to Joseph's prompts to return. At the next visit, P.S. stood with her arms folded and said, "I don't want to play with dad." After another visit, P.S. climbed into the social worker's car and stated, "Now take me home, where I belong."
A.S. often took control during the visit. She told Joseph how to manage P.S. so she would cooperate with his requests. Joseph had a difficult time setting limits for the children and often appeared frustrated, especially when P.S. refused to communicate with him. A.S. told her sisters what to do. The social worker stated A.S. did not behave the same way at the caregivers' home. A.S. took her role of big sister seriously and nurtured her siblings when they were sad or upset. P.S. looked up to A.S.
The social worker believed the children did not consider Joseph to be a parental figure. P.S. did not appear to have a bond with Joseph, and the benefits of adoption outweighed any residual relationship A.S. may have had with Joseph.
*357 The court found that adoption was in the best interests of the children and there was no compelling reason for determining that termination of parental rights would be detrimental to them. The court terminated the parental rights of Joseph, Rachel and P.S.'s presumed father, Ruben.

DISCUSSION

I

Section 388
Joseph contends the court erred when it did not conduct an evidentiary hearing on his section 388 petition. Joseph asserts he did not receive proper notice of the dependency proceedings and when the court determined he was the children's presumed father,[4] he was entitled to custody of the children, or reunification services, absent a finding of detriment.
The Agency asserts the court properly determined Joseph did not make the requisite prima facie showing that would entitle him to a hearing on the merits of the petition. The Agency argues Joseph waited 22 months to participate in the children's dependency proceedings. His recent completion of a parenting course and ongoing participation in therapy did not establish a prima facie case of changed circumstances. Further, Joseph did not state any reason to show why additional delay in selecting and implementing a permanent plan for the children would be to their benefit.
Minors' counsel joins with the Agency's arguments.
(1) Under section 388, a party may petition the court to change, modify or set aside a previous court order. The petitioning party has the burden to show, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interests. (§ 388; Cal. Rules of Court, rule 5.570(a)[5]; In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297]; In re Amber M. (2002) 103 Cal.App.4th 681, 685 [127 Cal.Rptr.2d 19].) The court must liberally construe the petition in favor of its sufficiency. (In re Marilyn H. (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826] (Marilyn H.); rule 5.570(a).) "The parent need only make a prima facie showing to trigger the *358 right to proceed by way of a full hearing." (Marilyn H., supra, at p. 310; see In re Hashem H. (1996) 45 Cal.App.4th 1791, 1798-1799 [53 Cal.Rptr.2d 294].)
We review a summary denial of a hearing on a modification petition for abuse of discretion. (In re Zachary G. (1999) 77 Cal.App.4th 799, 808 [92 Cal.Rptr.2d 20].) Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. (In re Geoffrey G. (1979) 98 Cal.App.3d 412, 421 [159 Cal.Rptr. 460].)
The arguments Joseph sets forth on appeal with respect to his section 388 petition are without merit. Joseph's petition stated his circumstances had changed because he completed a parenting class and participated in individual counseling in the sibling's case. He did not allege inadequate notice or that he was entitled to custody of the children unless the court made an express finding of detriment. Where the parties assume certain issues are raised by the pleadings, neither party can change this theory for purposes of review on appeal. (Ernst v. Searle (1933) 218 Cal. 233, 240 [22 P.2d 715]; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 407, p. 466.) Further, to the extent Joseph raises these issues in his supplemental brief as due process concerns (see pt. II, post), he implicitly acknowledges his section 388 petition was limited to the allegations stated on the face of the petition.
To the extent the issue is not forfeited on appeal, we conclude the court did not abuse its discretion when it denied Joseph's request for an evidentiary hearing on his section 388 petition for modification. Joseph did not state he was currently able to provide the children a stable, safe, permanent placement. He sought only to continue the dependency proceedings, which had been initiated 36 months earlier. "Childhood does not wait for the parent to become adequate." (Marilyn H., supra, 5 Cal.4th at p. 310.) This showing of changing circumstances is not sufficient to require a hearing on the merits of Joseph's section 388 petition.
Further, Joseph did not make the requisite showing of the children's best interests. He did not state any reason why a delay in permanency would benefit A.S. and P.S. or impact their relationship with their sister. The three siblings were living together. Joseph did not file his petition until the day of the section 366.26 hearing. At that time, the children's interests in stability outweighed any interest they may have had in the possibility of reunification with Joseph. (Marilyn H., supra, 5 Cal.4th at p. 309; In re Edward H. (1996) 43 Cal.App.4th 584, 594 [50 Cal.Rptr.2d 745]; see In re Kimberly F. (1997) 56 Cal.App.4th 519, 530-531 [65 Cal.Rptr.2d 495].)

*359 II

Substantive Due Process
(2) "`It is axiomatic that due process guarantees apply to dependency proceedings.'" (In re Dakota H. (2005) 132 Cal.App.4th 212, 222 [33 Cal.Rptr.3d 337] (Dakota H.), quoting Ingrid E. v. Superior Court (1999) 75 Cal.App.4th 751, 757 [89 Cal.Rptr.2d 407]; see Stanley v. Illinois (1972) 405 U.S. 645, 658 [31 L.Ed.2d 551, 92 S.Ct. 1208]; Santosky v. Kramer (1982) 455 U.S. 745, 753-754 [71 L.Ed.2d 599, 102 S.Ct. 1388] (Santosky).) In determining the process that is due, the court evaluates three elements: the private interests at stake, the government's interest and the risk the procedures used will lead to an erroneous decision. (Mathews v. Eldridge (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893]; Lassiter v. Department of Social Services (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 101 S.Ct. 2153]; Dakota H., supra, 132 Cal.App.4th at pp. 222-223; see also Santosky, supra, 455 U.S. at pp. 753-757.)
The California dependency system comports with federal due process requirements because "[t]he number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child." (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 256 [19 Cal.Rptr.2d 698, 851 P.2d 1307] (Cynthia D.).)
Because it is important to the issues raised in this appeal, we note that the private interest at stake in dependency proceedings varies according to the father's status. Presumed fathers possess far greater rights than biological fathers. (Francisco G. v. Superior Court (2001) 91 Cal.App.4th 586, 596 [110 Cal.Rptr.2d 679].) "[A] biological father's `desire to establish a personal relationship with [his] child, without more, is not a fundamental liberty interest protected by the due process clause.' [Citation]." (In re Christopher M. (2003) 113 Cal.App.4th 155, 160 [6 Cal.Rptr.3d 197].)

A

The Parties' Contentions and Standard of Review
Joseph contends principles of substantive due process prohibit termination of parental rights without a jurisdictional finding that the parent was unfit and a subsequent finding or findings of detriment. (In re Gladys L. (2006) 141 Cal.App.4th 845, 848 [46 Cal.Rptr.3d 434] (Gladys L.), citing Santosky, supra, 455 U.S. at p. 758.) Joseph asserts his due process rights were violated when *360 the court terminated his parental rights without an initial finding of parental unfitness and a subsequent, adequate finding of detriment.[6]
The Agency asserts dependency jurisdiction may be established against one parent without regard to the fitness or unfitness of the other parent. It argues the court is required to make a finding of detriment only when it removes the child from the custodial parent (§ 361, subd. (c)) or denies placement to a noncustodial parent requesting custody of his or her child (§ 361.2, subd. (a)). The Agency contends the court is not required to make a detriment finding for a previously noncustodial parent who did not seek custody of the child at the disposition hearing. The Agency argues that under such circumstances, the court may terminate the rights of the previously noncustodial parent if it finds that adoption is in the child's best interest.
Minors' counsel joins with the Agency's argument.
Because the question is one of law, we review the claimed constitutional violation de novo. (Dakota H., supra, 132 Cal.App.4th at p. 222.)

B

The Court May Assume Jurisdiction over the Child Based on the Acts or Omissions of One Parent
Joseph asserts the court cannot terminate a parent's rights without having made an initial determination the parent was unfit under section 300. Joseph relies on Gladys L. which held that the father's due process rights were violated when the trial court terminated his parental rights without a finding of parental unfitness.
In Gladys L., the section 300 allegations pertained only to the mother of the child. The child's presumed father appeared at the detention hearing and then disappeared for three years. When he reappeared at the section 366.26 hearing, the court denied his request to reestablish his relationship with his *361 daughter. (Gladys L., supra, 141 Cal.App.4th at p. 847.) The reviewing court stated before parental rights may be terminated, constitutional standards of due process require the trial court to have made prior findings of parental unfitness, and remanded the case to the trial court to "determine whether, based upon the facts as they currently exist, a petition under section 300 can be properly pleaded and proven" (id. at pp. 848-849). Thus Gladys L. suggested a sustained dependency petition alleging the unfitness of each parent was a necessary precedent to termination of parental rights. (See In re P.A. (2007) 155 Cal.App.4th 1197, 1212 [66 Cal.Rptr.3d 783] (P.A.).)
(3) A division of the same court later considered the identical issue in P.A., supra, 155 Cal.App.4th at page 1197. The P.A. court respectfully disagreed with Gladys L. to the extent it suggested that a sustained section 300 petition as to each parent was a required precursor to termination of parental rights. (P.A., supra, at p. 1212.) We, too, respectfully disagree with Gladys L., and adopt the reasoning of P.A.: ". . . a child may be declared a dependent if the actions of either parent bring the child within the statutory definitions of dependency. [Citations.] Additionally, a jurisdictional finding is not an adequate finding of parental unfitness because it is made by a preponderance of the evidence. [Citations.] Therefore, even if the dependency petition had alleged [the parent's] unfitness, the order sustaining the petition would have been inadequate, by itself, to terminate [that parent's] parental rights without a subsequent finding of detriment by clear and convincing evidence. Thus, the absence of a jurisdictional finding that related specifically to [that parent] does not prevent termination of parental rights." (P.A., supra, 155 Cal.App.4th at p. 1212; see also In re Alexis H. (2005) 132 Cal.App.4th 11, 16 [33 Cal.Rptr.3d 242]; In re Alysha S. (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494] ["a jurisdictional finding against one parent is good against both"].)
(4) We further note the plain language of section 366.26, subdivision (c)(1), supports this conclusion. Section 366.26, subdivision (c)(1) identifies the circumstances that constitute a sufficient basis for termination of parental rights.[7] The provision does not include an initial finding of parental unfitness. Rather, if the court finds the child is adoptable and there are no exceptions to termination, the court is required to terminate parental rights if the court has made a previous finding that (1) reunification services shall not be offered to the parent under section 361.5, subdivision (b) or subdivision (e)(1); or (2) the whereabouts of the parent have been unknown for six *362 months or the parent has failed to visit or contact the child for six months, or the parent has been convicted of a felony indicating parental unfitness; or (3) the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services under section 366.21 or 366.22. (§ 366.26, subd. (c)(1).)
(5) A sustained section 300 petition as to each parent is not a required precursor to termination of parental rights. Thus, we conclude the court did not violate Joseph's due process rights when it terminated his parental rights without making an initial finding that his acts or omissions brought his children within any of the descriptions set forth in section 300.

C

A Biological Father Has No Right to an Express Finding of Unfitness or Detriment Before the Court May Terminate His Parental Rights
(6) California dependency law distinguishes between a presumed father, a biological father and a biological father that came forward early in the dependency case and displayed a full commitment to the child (Kelsey S. father). (Adoption of Kelsey S. (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; In re Zacharia D. (1993) 6 Cal.4th 435, 451 [24 Cal.Rptr.2d 751, 862 P.2d 751]; In re Jason J. (2009) 175 Cal.App.4th 922, 931-932 [96 Cal.Rptr.3d 625] (Jason J.).) This court has consistently held that a biological father's rights are limited to establishing his right to presumed father status, and the court does not err by terminating a biological father's parental rights when he has had the opportunity to show presumed father status and has not done so. (In re Ninfa S. (1998) 62 Cal.App.4th 808, 811 [73 Cal.Rptr.2d 209]; In re Spencer W. (1996) 48 Cal.App.4th 1647, 1652-1655 [56 Cal.Rptr.2d 524]; see Jason J., supra, 175 Cal.App.4th at p. 935 [neither Santosky nor Cynthia D. pertains to the rights of mere biological fathers].)
Joseph, as the children's alleged father, received actual notice of the proceedings before the initial detention hearing in April 2006. He appeared in the proceedings for the first time in February 2008. Although the court granted Joseph status as A.S.'s presumed father, it found that Joseph was P.S.'s biological father. Because Joseph did not demonstrate a willingness to accept full parental responsibilities for P.S. (see, ante, at pp. 354-355, 356), the court was not required to make a particularized finding of unfitness or detriment before terminating his parental rights and instead was entitled to focus on P.S.'s best interests. (In re Sarah C. (1992) 8 Cal.App.4th 964, 981 [11 Cal.Rptr.2d 414].)

*363 D

As Required Under Section 366.26, Subdivision (c)(1), the Court Made an Adequate, Previous Detriment Finding as to Joseph
Joseph argues his constitutional rights were violated because the court did not make an adequate finding of detriment as to him. The Agency disagrees.[8]
At the section 387 disposition hearing, the court found, by clear and convincing evidence, that return of the children to Joseph would create a substantial risk of detriment to them. The court then terminated reunification services. The court's previous explicit finding comports with statutory and constitutional requirements. (§ 366.26, subd. (c)(1); see Cynthia D., supra, 5 Cal.4th at p. 242.)
To the extent the parties agree this finding was problematic, the record clearly indicates Joseph initially refused to participate in dependency proceedings, his whereabouts were unknown for a substantial period and he did not visit the children for more than six months. Although the better practice would have been for the court to have explicitly made these findings at one or more of the previous hearings, there is no doubt these circumstances made the children's placement with, or return to, Joseph's custody detrimental to the children.
This case is similar to P.A., in which the father's persistent avoidance of responsibility, his failure to seek any relief in the juvenile court and lack of involvement in the child's life for an extended period, constituted substantial evidence of detriment. (P.A., supra, 155 Cal.App.4th at pp. 1210-1212; see also In re G.S.R. (2008) 159 Cal.App.4th 1202, 1214 [72 Cal.Rptr.3d 398].) The record clearly supports the same conclusion here. Joseph's rights to due process were not violated.

III

Termination of Parental Rights[*]

*364 DISPOSITION
The orders are affirmed.
McDonald, J., and O'Rourke, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.
[1] Further statutory references are to the Welfare and Institutions Code.
[2] Rachel was married to Ruben R., who was incarcerated before the children were conceived. Ruben remained A.S.'s presumed father by reason of marriage until the court entered a judgment of nonpaternity in March 2008. Ruben remained P.S.'s presumed father throughout the proceedings. The Agency was unable to locate Ruben.
[3] The March 27 minute orders conflict with the amended section 300 petitions, which reflect Joseph's status as each child's presumed father. The Agency's section 366.26 report and addendum also refer to Joseph as the children's presumed father. All other minute orders refer to Joseph as A.S.'s presumed father and P.S.'s biological father.
[4] Joseph relies on the notation of presumed father status on the amended petitions and the Agency's reports dated December 15, 2008, and March 16, 2009. He acknowledges the discrepancies in the record. (See fn. 3, ante.)
[5] Further rule references are to the California Rules of Court.
[6] Joseph also contends the court violated his due process rights by depriving him of custody and reunification services without making a finding of detriment. We need not address this claim of error. Joseph did not bring this issue to the court's attention and instead consented to the proposed disposition at the section 387 hearing. (Dakota H., supra, 132 Cal.App.4th at p. 222.) Further, even if the doctrine of forfeiture did not apply, we would reject Joseph's claim. Joseph has no due process right to reunification services. "Reunification services are a benefit; a parent is not constitutionally entitled to reunification services." (In re Alanna A. (2005) 135 Cal.App.4th 555, 563 [37 Cal.Rptr.3d 579].) With respect to his claim of right as a presumed father to custody, as we explain, post, at page 363, the record clearly shows the court made a finding of detriment at the section 387 disposition hearing.
[7] These circumstances describe the previous findings of "detriment" or "parental unfitness" required before the court may terminate parental rights. In the context of termination of parental rights, these standards are used interchangeably. (Cf. P.A., supra, 155 Cal.App.4th at p. 1211; see also Dakota H., supra, 132 Cal.App.4th at p. 224, fn. 3 [the phrase "parental unfitness" is disfavored].)
[8] The Agency also contends in cases involving a noncustodial parent that does not make an initial request for custody of his or her child under section 361.2, a finding of detriment is not required before the court may terminate parental rights. The Agency consented to the proposed disposition at the section 387 hearing, including the detriment finding, and has forfeited this issue on appeal. (Dakota H., supra, 132 Cal.App.4th at p. 222.)
[*] See footnote, ante, page 351.