Filed 7/29/16  In re Christiana V.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re CHRISTIANA V., a Person Coming Under the Juvenile Court Law. _____ | B269086 |
| | (Los Angeles County Super. Ct. No. CK99793) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER MODIFYING THE OPINION AND DENYING PETITION FOR REHEARING |
| Plaintiff and Respondent, | (NO CHANGE IN THE JUDGMENT) |
| v. | |
| CYNTHIA V. et al., | |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed in the above-entitled matter on July 21, 2016, be modified in the following manners:

1.     On page 6, the word "no" is deleted from the second to last sentence in the last full paragraph.  The sentence shall now read:

Mother submitted documentation to support her petition.

2. On page 6, the paragraph beginning at the bottom of the page and continuing to page 7 is deleted and replaced with the following paragraph:

On December 17, 2015, the court conducted the contested section 366.26 hearing. On this date, Mother argued for reconsideration of her section 388 petition and submitted additional documents to the court, including letters regarding her participation in a parenting program and counseling sessions. The court denied the request for reconsideration.

3. On page 8, the first sentence of the last paragraph is deleted. ("Mother failed to attach any documents to her section 388 petition to support her contention of changed circumstances.") It is replaced with the following sentence:

Mother's section 388 petition failed to support her contention of changed circumstances.

4. On page 9, the first full sentence at the top of the page is deleted. ("These documents, however, only state that Mother had signed up for parenting classes and completed a two-hour HIV training, neither of which met the requirements of her case plan.") It is replaced with the following sentence:

These documents, however, failed to demonstrate that Mother met the requirements of her case plan.

These modifications do not constitute a change in the judgment. Appellant's petition for rehearing is denied. NOT TO BE PUBLISHED.

_____

ROTHSCHILD, P. J.             CHANEY, J.             LUI, J.

2

Filed 7/21/16  In re Christiana V. CA2/1  (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re CHRISTIANA V., a Person Coming Under the Juvenile Court Law.<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>CYNTHIA V. et al.,<br><br>    Defendants and Appellants. | B269086<br><br>(Los Angeles County<br>Super. Ct. No. CK99793) |

APPEAL from orders of the Superior Court of Los Angeles County.  Nichelle L. Blackwell, Commissioner.  Affirmed.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant Cynthia V.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant David V.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Cynthia V. (Mother) and David V. (Father) appeal from orders of the juvenile court terminating parental rights of their daughter Christiana V. Mother argues that the court abused its discretion when it denied her Welfare and Institutions Code section 388 modification petition without granting her a hearing.[1] Father argues that the court erred when it terminated his parental rights without sufficient evidence that it would be detrimental to the child to return her to his custody. We disagree with their contentions and thus affirm the court's orders.

## FACTS AND PROCEEDINGS BELOW

A. *Jurisdiction and Removal*

Our opinion in Mother's previous appeal sets forth the factual and procedural background regarding the juvenile court's jurisdictional findings and removal of the child (see *In re Christiana V.* (Oct. 3, 2014, B253818) [nonpub. opn.]), and we need not repeat it in detail here. Briefly, Christiana was born in May 2013, to Mother, who was then 17 years old and a juvenile court dependent. Mother, who was infected with a life threatening viral disease, left her placement during her pregnancy without permission and failed to take her medication, which was necessary for her own health, as well as to help prevent transmission of her illness to her child.

On the day of the child's birth, a referral was made to the Los Angeles County Department of Children and Family Services (DCFS), and a social worker on the child's behalf visited Mother in the hospital. Mother stated that the father of the child was Jaime V., but refused to provide contact information for him. Mother's social worker suspected that the father was a man much older than Mother, who visited Mother in the hospital. When the social worker asked the man if he was Jaime, he said, "No." The man said his name was David, but stated he had no identification on him and was not the child's father.

Reports from Mother's social worker, the hospital nurse and the child's social worker indicated that Mother had a bad attitude and was uncooperative. They also

---

[1] All statutory references are to the Welfare and Institutions Code.

feared Mother would not provide the necessary medical treatment to prevent disease transmission to the child and would leave any placement. Accordingly, DCFS placed a hospital hold on the child, who was in the neonatal intensive care unit.

On June 4, 2013, DCFS filed a petition under section 300, subdivision (b) alleging that Mother endangered the child by failing to take her prescribed medication for a life threatening illness during her pregnancy, and she continued to exhibit runaway behavior, which also placed the child at risk of physical harm, damage, danger and medical neglect. The court detained the child, who remained in the hospital with Mother.

On July 8, 2013, the court asserted jurisdiction, sustained the petition and removed the child from Mother's custody, placing her in a foster home where the child has remained throughout the case. It also found Jaime V. to be the child's alleged father. The court ordered reunification services and ordered DCFS to make efforts to find a placement that would eventually accommodate Mother and her child, but Mother failed to comply with the terms of that residential facility, ran away and was arrested for theft. Mother appealed the court's jurisdiction and removal orders, and we affirmed. (*In re Christiana V.*, *supra*, B253818.)

B.    *Facts Following Mother's Prior Appeal*

To assist Mother to become a better and more stable parent, the juvenile court ordered her to participate in parenting classes, individual counseling, HIV counseling and random drug testing. Mother, however, failed to attend parenting classes because they were held in the morning, she missed several scheduled visitations with her daughter, and she tested positive for marijuana on February 10, 2014 and February 24, 2014, and failed to appear for future drug testing. When questioned about her failure to appear for drug testing by the social worker, Mother said she "forg[o]t" and that she "g[o]t busy." Staff at the Foster Family Agency (FFA), where the Mother's visitations with the child took place, reported that Mother arrived for one visit " 'reek[ing] of marijuana,' " although she denied using it. Mother was not in compliance with the orders that she participate in individual counseling and failed to appear for other required appointments and meetings to monitor her progress.

3

Although Mother had consistently told DCFS and the court that the father of her child was Jaime, in April 2014, Mother told the social worker that she had reunited with the child's actual birth father, David V. (Father), and he wanted custody of the child. Shortly after this conversation, Father called the social worker and stated that he was the birth father but had stayed away from his daughter because Mother was underage at the time of conception and birth and he did not want to go to jail. The social worker advised Father to attend future court hearings.

On May 5, 2014, Mother faxed a copy of Mother and Father's marriage certificate to the social worker, which indicated that they had gotten married on April 19, 2014. They were residing together.

At the June 11, 2014 six-month review hearings, Father made his first appearance. Although neither parent provided the court with a parentage questionnaire, Mother told the court she previously wanted to conceal Father's identity because she was a minor when the child was born. She, therefore, invented a person named "Jaime," whom she represented to DCFS and the court as the presumed father. Mother asked the court to order genetic testing to verify Father's paternity. The court continued the matter in order for the social worker to interview Father and for Father to obtain a paternity test.

Following the hearing, the social worker made several unsuccessful attempts to talk to Father by calling the cellular telephone number he had provided at the June 11 hearing but was only able to leave voicemail messages. Almost two months later, on August 5, 2014, Father called the social worker and said that he recently obtained a new phone and had not previously called the social worker because he was busy with work. Father stated that he had already taken a paternity test. Father initially denied to the social worker that he had a criminal history, but when she confronted him with the information on his Live Scan fingerprint report, indicating that he had been arrested for prostitution and convicted of domestic violence, he acknowledged it was accurate.

At the August 14, 2014 hearing, the court found that, based on the genetic testing, Father was Christiana's biological parent. Mother's counsel asked the court to offer Father reunification services because Mother was already receiving services. The court

4

ordered DCFS to meet with Father and "come up with what would be appropriate in terms of services, understanding that we're late and that mom is not in compliance."

On August 26, 2016, Father met with a DCFS social worker who reviewed with him the proposed case plan in detail, which Father agreed to and signed. Father began monitored visitations with the child, but he did not consistently visit her, and, when he did, he did not engage the child or respond to parental coaching provided by the monitor.

On January 14, 2015, Foster Family Agency (FFA) filed a caregiver information form with the juvenile court. Mother had attended 34 of 60 visits offered to her since the June 11, 2014 hearing. When the child was in a good mood, Mother enjoyed the visits, but if the child was upset or not feeling well, Mother had difficulty soothing her and would call the child "spoiled." Mother appeared more focused on taking photographs of the child than in engaging with her.

Father, for his part, was inconsistent with his visits as well. When he did visit, he would use the time to express his dissatisfaction with the case plan and visitation arrangements. The monitor would try to redirect Father and tell him to play with the child, but he would continue to use the time to complain. He refused to change the child's diaper when directed to do so, and twice allowed her to remain in a soiled diaper for the duration of the visit. On one visit, the FFA social worker told Father that Mother would not be attending, and he responded, "What am I going to do, visit by myself? I don't want to [do] that." He then continued with the visitation and spent his remaining time complaining about Mother to the social worker.

At the January 22, 2015 12-month review hearing, DCFS recommended termination of services for both parents because they had failed to comply with their case plans. Because the parents opposed the recommendation, the matter was set for a contested hearing. Due to a few continuances, the nature of the hearing changed from a contested 12-month review hearing to a contested 18-month review hearing. At this May 26, 2015 hearing DCFS presented evidence that neither parent was in compliance with their case plan. Mother was inconsistent in her visitation, and had failed to attend individual counseling or submit to drug testing, and Father reported Mother had been

5

staying out all night, and he believed she was using drugs. Father, for his part, failed to visit the child consistently, and did not participate in any of the services previously ordered by the court.

The court found that "parents were ordered to participate in programs and services, and the court finds by clear and convincing evidence that the extent of progress made toward alleviating or mitigating the causes necessitating placement by both the mother and father has been incomplete." The court ordered termination of reunification services and set a section 366.26 hearing to determine a permanent plan for the child.

On September 21, 2015, the court held a section 366.26 hearing. DCFS recommended that the court terminate parental rights and free the child for adoption. DCFS reported that Mother's and Father's visits were inconsistent and of poor quality, and the child did not have shared common experiences or a close or strong bond with either parent. In contrast, the child continued to thrive in the home of her foster parents, whom she had been placed with at the age of two months after she was released from the hospital, and with whom she shared a parental bond. The foster parents were also identified as her prospective adoptive parents.

Both parents opposed the recommendation and requested a contested hearing. Further, Mother's counsel indicated that she would be filing a modification petition. The court ordered DCFS to provide a supplemental report and set a contested section 322.26 hearing.

On December 10, 2015, Mother filed a section 388 petition requesting that the court reinstate her reunification services, asserting that she had completed several parenting education courses and had enrolled in and regularly attended individual counseling. Mother submitted no documentation to support her petition. On December 14, 2015, the court denied Mother's section 388 petition based on its failure to state new evidence or changes of circumstances.

On December 17, 2015, the court conducted the contested section 366.26 hearing. On this date, Mother argued for reconsideration of her section 388 petition and submitted several documents to the court, including a letter dated August 3, 2015, from a program

6

coordinator at the Children's Bureau reporting Mother and child enrolled in a parenting class on April 8, 2015. The letter stated Mother attended a parent-teacher conference in June 2015 and generally described the program. Mother also provided a document dated July 1, 2015, stating Mother enrolled in a parent education class that was scheduled to begin on September 5, 2014, and at the time of the letter, she had attended no sessions. Finally, Mother attached a certificate dated September 18, 2015, stating she successfully completed a two-hour HIV 101 class. The court denied the request for reconsideration.

The court then found by clear and convincing evidence that the child was likely to be adopted and that return to the parents would be detrimental to the child and no exception to adoption existed; the relationship the child had with Mother was not parental and the child needed permanence. The court further found by clear and convincing evidence that return to Father would be detrimental, finding that he refused to take on a parental role during visitations, failed to comply with the case plan and did not want to visit the child without Mother. Accordingly, the court terminated parental rights, freed the child for adoption, and designated her foster parents as her prospective adoptive parents.

Mother and Father timely appealed.

## DISCUSSION

I.    *The Court Did Not Abuse Its Discretion When It Summarily Denied Mother's Section 388 Petition.*

Mother contends that the court abused its discretion when it summarily denied her section 388 modification petition without a hearing.  We disagree.

Section 388 allows a person having an interest in a dependent child to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence.  (§ 388.)  The petition "shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."  (*Ibid*.)

The parent seeking modification must " 'make a prima facie showing to trigger the right to proceed by way of a full hearing.  [Citation.]'  [Citations.]"  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)  There are two parts to this showing:  A parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revocation of the prior order would be in the best interests of the child.  (*Ibid*.)

### *No Changed Circumstances*

Mother failed to make the showing necessary to obtain a hearing.  The child was detained from Mother at birth and never reunified with her.  At the disposition hearing, Mother was ordered to participate in a parenting program, individual counseling, HIV counseling, and random drug testing and her visits were required to be monitored.  When the juvenile court terminated reunification services on May 26, 2015, two years after the child's birth, Mother's visits remained inconsistent and she had failed to complete the counseling requirements and parenting programs outlined in her case plan and failed to participate in drug testing for over a year after having produced two positive drug tests in February 2014.  Moreover, Father reported that Mother continued to use drugs after she tested positive and stopped testing.

Mother failed to attach any documents to her section 388 petition to support her contention of changed circumstances.  On the date of the section 366.26 hearing she asked the court to reconsider its denial of her section 388 petition and in support of that

8

request submitted documents to the court. These documents, however, only state that Mother had signed up for parenting classes and completed a two-hour HIV training, neither of which met the requirements of her case plan. In short, Mother's section 388 petition, and her request in court to reconsider the denial of that petition, showed that little if anything had changed since the juvenile court terminated her reunification services on May 26, 2015. She thus failed to make a prima facie showing of changed circumstances that would have warranted the court granting a hearing on her section 388 petition.

We need not consider whether the petition presented a prima facie showing that revoking the termination of parental rights would serve the best interest of the child because Mother did not present a prima facie showing on the first requirement, changed circumstances.

II.    *The Court's Order Terminating Father's Parental Rights Was Supported By Substantial Evidence.*

Father argues that the court erroneously terminated his parental rights without finding, by clear and convincing evidence, that returning the child to his custody would create a substantial risk of detriment. We disagree.

Parents have a fundamental interest in the care, companionship, and custody of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758.) "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." (*Id.* at pp. 747–748.) California's dependency scheme requires the juvenile court make a finding that awarding custody of a dependent child to a parent would be detrimental to the child before it may terminate parental rights. (*In re Z.K.* (2011) 201 Cal.App.4th 51, 65.) To satisfy due process, California also requires that a finding of detriment be made by clear and convincing evidence. (*Ibid.*) Here, the court made a finding of detriment *prior* to the December 17, 2015 section 366.26 hearing as required under our case law, although it did not specifically use the phrase "detrimental to return." Specifically, at the May 26, 2015 hearing, the court found that the "parents were ordered

9

to participate in programs and services, and the court finds *by clear and convincing evidence* that the extent of progress made toward alleviating or mitigating the causes necessitating placement by both the mother and father has been incomplete." (Italics added.) The court also stated at that same hearing that Father "has not consistently and regularly contacted and visited the child, has not made significant progress in resolving the problems that led to the removal of the child, and has not demonstrated the capacity and ability to complete the objectives of the treatment plan." The minute order from the hearing also reflects the court found that return of the child to the parents "would create a substantial risk of detriment to the physical/emotional well-being of the minor."[2]

Indeed, the case at bar is similar to *In re P.A.* (2007) 155 Cal.App.4th 1197, where our colleagues in Division Three held findings of detriment, if supported by clear and convincing evidence, may provide an adequate foundation for an order terminating parental rights even in the absence of a sustained petition as to one parent. (*Id*. at pp. 1212–1213.) (See also *In re A.S.* (2009) 180 Cal.App.4th 351, 363 [adopting reasoning of *P.A.*; termination of parental rights of presumed father without sustained section 300 petition as to him did not violate his due process rights; court had made finding, by clear and convincing evidence, at hearing on supplemental petition under section 387, that return of children to father would be detrimental; moreover, record showed that he initially refused to participate in dependency proceeding, his whereabouts were unknown for substantial period, and he failed to visit children for more than six months].)

---

[2] Although the minute order reflects that the court made the detriment to return finding by a preponderance of the evidence, the reporter's transcript documents that the court made its findings by clear and convincing evidence. "Conflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 249.) Here, we follow the general presumption and reconcile this conflict in favor of the reporter's transcript.

Father here, like the fathers in *In re P.A.*, *supra*, and *In re A.S.*, *supra*, avoided coming forward and taking responsibility for his child. Moreover, he failed to visit the child for her first year of life, although he had knowledge of her birth but feared for his own welfare in light of Mother's underage status. Because Father and Mother concealed Father's identity from DCFS and the juvenile court, he was not named in the petition. When he finally came forward late in the process, he failed to comply with his case plan, visiting the child sporadically, showing little interest in interacting with her, refusing to change her soiled diapers and stating that he did not want to visit the child without Mother being present. These facts, noted by the court *prior* to the hearing terminating parental rights and at the termination hearing itself constituted clear and convincing evidence of detriment and militated strongly against placing the child in his care, notwithstanding the absence of sustained allegations as to him.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


LUI, J.


11