Filed 8/18/20  In re Abdul CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Abdul K., A Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.M.,<br><br>    Defendant and Appellant. | A159443<br><br>(Alameda County<br>Super. Ct. No. JD-02769702) |

In September 2019, the juvenile court set a hearing to terminate parental rights over Abdul K., a medically fragile child who did not receive adequate care in his parents' home.  Abdul's mother, N.M. (mother), challenged the September 2019 order in a petition for an extraordinary writ, which this court denied.  (*N.M. v. Superior Court*, A158485.)  Subsequently, mother's trial counsel filed a petition requesting that Abdul be returned to mother because of changed circumstances, which the juvenile court denied. (Welf. & Inst. Code, § 388; statutory references are to this code.)  In the present appeal, mother contends the juvenile court erred by summarily denying the section 388 petition.  We disagree and affirm the order.

1

# FACTUAL AND PROCEDURAL HISTORY

## I. Background[1]

Abdul was born premature with a positive toxicology report for opiates and exposure to methadone. During an investigation by the Alameda County Social Services Agency, mother accused her husband, N.K. (father), of domestic abuse, but she later recanted. The Agency provided family maintenance services until January 2017, when a dependency petition was filed, and Abdul was removed from the home. In April, Abdul was returned to father's custody, again with family maintenance services. In December 2017, the dependency case was dismissed.

In April 2018, the Agency filed another dependency petition, which described Abdul as a "medically fragile" child who has been diagnosed with "oral [a]version, motor delay, global hypertonia, reflux, and is G-Tube dependent." Dependency jurisdiction was alleged under section 300, subdivision (b) (failure to provide adequate care) based on three factual claims: Abdul had been hospitalized multiple times for failure to thrive; on one occasion, Abdul was left in distress while his parents engaged in domestic violence in front of him; and parents had received family maintenance services and family reunification services, but still could not demonstrate the ability to provide adequate care for Abdul.

Abdul was detained and placed in foster care after mother admitted she was overwhelmed and needed help because father had recently abandoned her and the children. In May 2018, mother reported that father had left the country with one of their five children, leaving her and the other children homeless and with no means of support.

---

[1] This background information comes from the decision denying mother's writ petition, which is included in the appellate record.

2

In September 2018, the juvenile court sustained jurisdictional allegations, declared Abdul a court dependent, and ordered reunification services for mother. Mother was receiving public assistance and had some family support, which enabled her to meet the basic needs of her older children. But she had failed to demonstrate that she was capable of caring for Abdul.

In November 2018, Abdul was moved to a new placement after his original foster family reported that they were having trouble meeting Abdul's medical needs and that mother failed to respect appropriate boundaries. The court approved a placement in the "Non Related Extended Family Member" home of a couple who had a good relationship with Abdul's maternal grandparents.

In March 2019, the Agency recommended that the court terminate mother's reunification services at the six-month status review. Mother had not been consistent about attending Abdul's medical appointments, was not compliant in therapy, and appeared to have untreated mental health issues. She did not understand why Abdul was removed from her care despite the social worker's efforts to explain the Agency's concerns. And her lack of comprehension about Abdul's medical needs impacted her ability to demonstrate that she could care for him.

A contested review hearing was scheduled for June 2019. Meanwhile, the Agency reported ongoing concerns about mother and her inability to care for Abdul. She did not regularly attend Abdul's medical appointments and was often disruptive when she did attend. Abdul's gastroenterologist opposed reunification because Abdul experienced distress when mother was present. Mother's supervised visits were not consistently positive; she did not follow the Agency rules, brought inappropriate food, and was not careful with

Abdul. Her therapist terminated her due to non-compliance, and she repeatedly cancelled or missed appointments for a substance abuse evaluation until she was finally evaluated in late May 2019.

A contested 6- and 12-month review hearing was held between June and September 2019. The court admitted several Agency reports into evidence and heard testimony from four witnesses.

The county elicited testimony from Nancy Roth, the Agency's nurse for "medically fragile" children. Roth had been Abdul's nurse since May 2017 and had frequent direct contact with mother. Roth testified that mother cannot meet Abdul's medical needs, voicing three factual concerns: mother never demonstrated an ability to use the G-tube to feed Abdul; mother consistently maintained that Abdul could eat food, ignoring that his oral aversion made him throw up food that he ate; and mother did not pay attention to doctors who attempted to explain Abdul's medical condition. Roth testified that when Abdul was living with mother, he lost weight and was hospitalized several times. After he was removed, mother brought food that Abdul should not eat to his supervised visits, which made him sick. In his current placement, Abdul was doing well and gaining weight and the family was implementing a plan to decrease G-tube feedings, with the goal of enabling Abdul to take more food by mouth.

The County also presented testimony from Melanie Pang, the Agency social worker assigned to Abdul's case. Pang opined that mother would not reunify with Abdul because she did not understand his medical needs and required constant reminders to attend appointments. Furthermore, mother had not complied with her case plan other than to complete a parenting class. She missed several of Abdul's medical appointments and was disruptive or inattentive at appointments she did attend. After mother was terminated

4

from therapy for noncompliance, the Agency provided another referral, but mother had missed half of those appointments. Her behavior during supervised visits was inconsistent and she needed reminders to be cautious around Abdul.

Mother elicited testimony from her brother, Nazir. Nazir testified that he was a support person for mother and her children, who had moved into his home in May 2019. Nazir helped mother with her communication problems and assisted her in understanding what she needed to do to improve her situation. He also helped with transportation and finances. Nazir testified that mother had experienced trauma and struggled with mental health problems in the past. But he believed mother had shown significant improvement. She was attending appointments, participating in therapy and taking good care of her children.

Mother also testified on her own behalf. She stated that Abdul was removed from her care because of his weight and because of domestic violence. According to mother, nobody understood why Abdul kept losing weight. When he was in her care, she sought medical assistance and always followed the doctor's advice, but he did not get better. Mother testified that she understood her case plan requirements and substantially completed all of them. But under cross-examination, mother testified that she did not understand why this case was in juvenile court. She felt she had done everything a mother could do. She acknowledged that Abdul is medically fragile, but she denied playing any role in his malnutrition. Mother testified that she always fed Abdul what he was supposed to eat and made sure his needs were met. After Abdul was removed, she did everything the Agency told her to do.

On September 5, 2019, the juvenile court found, among other things, that mother was provided with reasonable reunification services, Abdul could not be returned safely to mother's care, and there was no substantial probability that Abdul could or would be returned to mother and safely maintained in her home prior to the date of an 18-month review. The matter was continued for a section 366.26 hearing, to consider terminating parental rights and select a permanent plan for Abdul.

Mother filed a petition for extraordinary review challenging the September 2019 order setting this case for a section 366.26 hearing. Her writ counsel presented extensive argument in support of two basic claims. First, Abdul should have been returned to mother's custody at the review hearing. Alternatively, mother was entitled to additional reunification services.

On December 5, 2019, this court denied mother's petition on the merits, affirming the juvenile court's three material findings. First, Abdul could not be safely returned home at the review hearing because mother made only partial progress in reaching the objectives of her case plan and failed to demonstrate that she fully understood and would meet Abdul's special needs. (§ 366.21, subd. (e).) Second, mother had been provided with reasonable reunification services designed to assist her in demonstrating that she was willing and able to meet Abdul's special needs. (§ 366.21, subd. (g)(1).) Finally, there was no substantial probability Abdul could be returned to mother within the extended period because she did not make substantial progress in resolving the problems that led to the dependency and failed to demonstrate her capacity and ability to provide Abdul a safe home where his medical needs would be met. (§ 366.21, subd. (g)(1)(B) & (C).)

## II. The Section 388 Petition

On January 21, 2020, mother's trial counsel, Mary Day, filed a petition under section 388 to change a prior court order. Day requested that the juvenile court set aside the September 2019 order setting this matter for a section 366.26 hearing and order instead that Abdul to be returned to mother with family maintenance services.

Day provided the following reason for her request: "Upon information and belief the mother's counsel believes the minor is no longer medically fragile, no longer needs to be fed through a g-tube and is now eating solid foods; and the mother has progressed during visitation to being engaged with the child, attentive to the minor's needs, and takes steps to ensure the minor's safety."

Day stated that granting her petition would benefit Abdul because it was consistent with the presumption that a child should be placed with a parent whenever possible, Abdul has become more enthusiastic about seeing mother at visits, and Abdul enjoys playing with his siblings.

On January 22, 2020, the juvenile court denied the section 388 petition, finding that the proposed change of order "does not promote the best interest of the child."

## DISCUSSION

Mother contends the juvenile court erred by denying the section 388 petition without holding an evidentiary hearing. Arguing that she made a prima facie case for setting aside the September 2019 order, mother requests that this court reverse the summary denial of the section 388 petition and every subsequent order the juvenile court has made in this case. We are unpersuaded by mother's contentions.

7

Section 388 provides that any person having an interest in a dependent child "may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall . . . set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order . . ." (§ 388, subd.(a).) The juvenile court is required to order a hearing on a section 388 petition "[i]f it appears that the best interests of the child may be promoted by the proposed change of order." (§ 388, subd. (d).)

The party filing a section 388 petition "has the burden to show, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interests. [Citations.] The court must liberally construe the petition in favor of its sufficiency. [Citations.] 'The [petitioner] need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' " (*In re A.S.* (2009) 180 Cal.App.4th 351, 357–358 (*A.S.*).)

We review rulings under section 388 for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.) Here, the juvenile court did not abuse its discretion by denying the section 388 petition without holding a hearing. The petition proffered by mother's trial counsel is unsupported by a statement of facts or an offer of proof that could be used to establish a change of circumstance justifying the proposed modification. Nor did counsel make a prima facie showing that placing Abdul in mother's custody would be in the best interest of Abdul.

Trial counsel's allegation on information and belief that Abdul is no longer medically fragile carries no weight; counsel provided no information

8

supporting this assertion making her personal belief irrelevant. The petition states that Abdul no longer "needs" to be fed with a G-tube and that he is "now eating solid foods," but the fact that Abdul is eating solid food is not new. Abdul's nurse testified at the review hearing that the foster family was in the process of implementing a plan to reduce the use of the G-tube so that Abdul could take more food by mouth. We find no basis in this record for trial counsel's assumption that if Abdul no longer "needs" the G-tube, he no longer requires special medical care. Indeed, the record establishes that it has taken a years-long process and a great deal of professional help to bring Abdul this far. The trial court could reasonably determine it was not in Abdul's best interests to jeopardize that progress by returning him to a parent who seems not to have understood the special care he needs.

Trial counsel also states that Abdul enjoys supervised visits with mother and playing with his siblings. Even if these were new facts, they are unrelated to the primary problem that led to Abdul's dependency and persisted despite the provision of 12 months of reasonable reunification services, namely his mother's inability to care for Abdul's special needs. Thus, proving these new allegations would not establish that returning Abdul to mother's custody would serve his best interest.

Finally, the section 388 petition attempts to invoke the presumption in favor of placing a dependent child with his parent, which no longer applies in this case because mother's reunification services have been terminated. (*In re Angel B., supra,* 97 Cal.App.4th at p. 464.) "Rather, at this point, the focus shifts to the needs of the child for permanency and stability. [Citation.] In fact, there is a rebuttable presumption that continued foster care is in the best interest of the child [citation]; such presumption obviously applies with even greater strength when the permanent plan is adoption rather than

9

foster care. A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, what is in the best interest of the child." (*Ibid.*) Here, the juvenile court concluded reasonably, that Abdul's best interest would be served by maintaining his current placement because mother did not present evidence that she had remedied the problems that led to this dependency.

On appeal, mother contends that her case is materially different from cases affirming the summary denial of section 388 petitions, such as *A.S.*, *supra,* 180 Cal.App.4th 351. In that case, a father challenged the summary denial of his section 388 petition to change an order setting a section 366.26 hearing. In the petition, father asserted that his recent completion of a parenting class and participation in therapy were changed circumstances entitling him to a custody order or reunification services. (*Id.* at p. 358.) The *A.S.* court found that father's showing of "changing circumstances" was insufficient to establish an actual change of circumstance that would justify the order he requested. Moreover, father did not make the requisite prima facie showing that granting his petition would be in the best interest of the children. (*Ibid.*)

The section 388 petition filed in this case is more cursory than the petition that was found lacking in *A.S.* Mother's counsel did not allege that mother has done something new or different to resolve the problems that led to this dependency. Evidence that Abdul's health has improved, leaving him less dependent on the G-tube, was presented at prior review hearings. Even if this steady improvement could be characterized as a new fact, it is at best a changing circumstance, which would not establish that Abdul can be safely

returned to mother's custody or otherwise justify setting aside the September 2019 order.

A.S. also confirms that a section 388 petition may be summarily denied when, as here, the petitioner fails to make a prima facie showing that the proposed change order is in the best interest of the dependent child. (*A.S., supra*, 180 Cal.App.4th at p. 358.) In this case, mother's trial counsel did not "make the requisite showing of [Abdul's] best interests." (*Ibid*.) Counsel's assertion that Abdul enjoys spending time with mother and his siblings does not suffice to explain why it would be in Abdul's best interest to return Abdul to the custody of mother.

Mother relies on *In re Josiah S.* (2002) 102 Cal.App.4th 403 (*Josiah S.*), a protracted dependency proceeding involving a minor who was born with multiple serious medical problems and was hospitalized when he was six months old for "non-organic failure to thrive." (*Id*. at p. 407.) The minor was declared a dependent pursuant to a petition alleging that his mother suffered from emotional problems limiting her ability to provide adequate care. (*Ibid*.) After the mother failed to reunify, the boy was placed in long-term foster care. In a post-permanency planning review report, the agency recommended suspending visitation on the ground that mother's difficult behavior was not consistent with a sincere interest in visitation. (*Id*. at p. 415.) Mother requested a contested hearing and also filed a section 388 petition so she could present medical evidence indicating that the minor's health problems were not attributable to mother's abuse or neglect. (*Id*. at p. 419–420.) The juvenile court denied mother's request for a contest and summarily denied the section 388 petition. The *Josiah S.* court found that the juvenile court erred by denying mother her statutory right to a contested hearing. The court also set aside the denial of mother's section 388 petition because the

11

entire record, including the refusal to hold a contested hearing, undermined the appellate court's confidence in the trial court's summary denial of the section 388 petition. (*Id.* at p. 420.)

We reject mother's contention that this case is "similar" to *Josiah S.* The bare-bones section 388 petition submitted by mother's trial counsel was not supported by an offer to present any evidence, let alone medical evidence. Nor was this mother denied her statutory right to a contested hearing. The juvenile court held a comprehensive review hearing before terminating reunification services and scheduling the section 366.26 hearing. Mother challenged the September 2019 order in her writ case, which afforded her an additional opportunity to be heard. After the writ was denied on the merits, mother's counsel filed a section 388 petition that was not based on new evidence or changed circumstances, and not supported by a prima facie showing that returning Abdul to mother's custody would be in the best interest of the child. Under the circumstances, the court did not abuse its discretion by denying the section 388 petition without holding a hearing.

## DISPOSITION

The order is affirmed.

_____

TUCHER, J.

WE CONCUR:

_____

POLLAK, P. J.

_____

BROWN, J.

*Alameda County v. N.M.* (A159443)

13