Filed 12/27/21  In re A.J. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.J., a Person Coming Under the Juvenile Court Law. | C093149 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.J.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD238820) |

Appellant, J.J., father of the minor, appeals from the juvenile court's order denying his Welfare and Institutions Code section 388 petition for modification, which sought placement of the minor with the paternal grandmother.  (Welf. & Inst. Code,

1

§§ 388, 395.)[1]  He contends the juvenile court erred in denying the request.  He also attempts to challenge the jurisdictional findings, which had been the subject of his previous notice of appeal.[2]  We decline to address his challenge to jurisdiction and affirm the juvenile court's order denying his petition for modification.

## I.  BACKGROUND

On February 15, 2018, Sacramento County Department of Child, Family, and Adult Services (the Department) filed a section 300 petition, subdivisions (a), (b), and (e), on behalf of the then five-month-old minor after the minor was found to have a subdural hematoma, consistent with an abusive head trauma, severe retinal hemorrhaging, and significant amounts of blood behind his eyes.  Several physician specialists stated that the minor's condition was of the nature as would ordinarily not be sustained except as a result of unreasonable or neglectful acts or omissions of the appellant.  The minor was in appellant's care when the trauma occurred and appellant failed to provide a plausible explanation for the minor's injuries.  The court ordered the minor detained.  It also ordered the Department to evaluate the home of the paternal step-grandmother for placement, as well as any other relatives who come forward requesting placement.  The paternal grandmother, who lived in Georgia had requested she be considered for placement, although she had never met the minor.

The jurisdiction hearing was continued several times.  During that time, minor's counsel requested the minor be placed with the paternal step-grandmother, who appellant had indicated was also his placement preference.  On May 15, 2018, appellant's counsel noted the paternal grandmother had requested an expedited Interstate Compact on the Placement of Children (ICPC).  The juvenile court ordered the Department to

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

[2]  We previously ordered incorporation by reference of the record in case No. C088645.

2

immediately initiate an expedited ICPC for the paternal grandmother. The expedited ICPC order was issued on June 6, 2018.

The jurisdiction hearing took place on December 4, 2018. Mother waived her right to trial and appellant requested a trial without witnesses. The juvenile court sustained the section 300, subdivisions (a), (b), and (e) allegations, finding that appellant was responsible for the minor's injuries and set the matter for a disposition hearing.

The disposition hearing took place on December 18, 2018. Appellant had been arrested for felony child abuse the week before the hearing. The juvenile court ordered the minor removed from appellant and placed with the mother under a family maintenance plan. Appellant was denied reunification services.

On March 14, 2019, a section 387 petition was filed due to mother's failure to comply with court orders, failing to inform the Department of the minor's whereabouts, failing to update the Department on her residence, and failing to apprise the Department of the minor's medical condition. The minor was detained from mother's care. The juvenile court found there were no relatives who had yet been approved for placement and ordered the Department to evaluate the paternal grandmother's home.

In its section 387 reports, the Department explained that the paternal grandmother's ICPC had been originally referred in June 2018, but the paternal grandmother had not completed the process and it was closed on February 25, 2019, because the minor had been placed with mother. Another ICPC referral was initiated on April 10, 2019, after the minor was detained from mother. On May 6, 2019, the social worker had received an e-mail from the ICPC supervisor in Georgia indicating proof of paternity was required before Georgia would move forward with the relative home study, and that the minute order and birth certificate were not sufficient documentation. The referral was sent back for proof of paternity and the social worker requested the referral remain open so the documentation could be submitted—which the social worker worked on obtaining, as detailed in the report, throughout the month of June. The social worker

forwarded the necessary proof of paternity to the ICPC supervisor in Georgia on July 8, 2019, and a response was pending.

The juvenile court sustained the section 387 petition on August 23, 2019, and ordered out-of-home placement with reunification services to be provided to mother, but not appellant. The juvenile court also set a relative placement hearing for November 19, 2019.

On November 19, 2019, the Department filed a progress report with an update on services, visits, and the ICPC of the paternal grandmother. It was reported that on September 24, 2019, the social worker received a message from the ICPC coordinator supervisor stating she would be sending a request to the state of Georgia for an update on the ICPC. The social worker then later called Georgia's ICPC director on November 14, 2019, requesting an update. On November 18, 2019, the social worker received a message from the ICPC supervisor in Sacramento stating she was sending another request for an update from Georgia as the ICPC was sent in July, and it was over the 60-day timeframe. The juvenile court continued the relative placement hearing to December 10, 2019.

On December 9, 2019, a relative placement hearing report was filed which included information that on November 18, 2019, the Sacramento ICPC supervisor sent a follow up request for an update to Georgia. On November 20, 2019, the social worker e-mailed and left a message for the Georgia ICPC administrator, who indicated she sent a request to the local office for additional information. On the same date, the social worker called the paternal grandmother and left a message for her to call the social worker back regarding the ICPC. On December 5, 2019, the social worker e-mailed the ICPC administrator in Georgia for an update and was informed that she had reached out to the local office and would call the social worker back. On the same date, the social worker spoke with the paternal grandmother who stated she had to complete a physical examination, and a home evaluation or interview had yet to be conducted. The social

4

worker also contacted the Georgia ICPC worker on the same date and left an e-mail requesting an update, and subsequently, on December 6, 2019, left a voicemail for the ICPC worker in Georgia.

On December 10, 2019, the juvenile court addressed the relative placement report with the parties and ordered the Department to provide updated information regarding the status of the pending ICPC for the next scheduled hearing, which was the permanency hearing set for February 4, 2020.

The Department's January 24, 2020 report, prepared for the February 4, 2020 hearing, stated the ICPC of the paternal grandmother was still pending and on January 15, 2020, the social worker received an e-mail from the Georgia ICPC case manager who reported the paternal grandmother was still pending her Child Safety Plan, drug screen and medical paperwork, and the home evaluation would be conducted after all the paperwork had been submitted. The Department was recommending the juvenile court terminate mother's reunification services.

The parties appeared on February 4, 2020. Mother requested removal of her court appointed counsel and that the review hearing be set for trial. The record does not reflect that the subject of relative placement was addressed at the hearing. The juvenile court set the hearings on mother's request to remove counsel, a de facto parent request, and the review hearing, with pretrial for the review hearing on April 7 and the combined hearing on April 21, 2020. Due to the COVID-19 pandemic, however, the trial was continued out until July 21, 2020.

On July 21, 2020, an addendum to the permanency report was filed containing additional information on mother's progress in services and the ICPC of the paternal grandmother. It was reported on February 10, 2020, that the social worker received a letter from Georgia ICPC Central with information that the ICPC request remained pending for a drug screen and medical information, and the paternal grandmother had changed insurance and could not get the items completed until February 2020. On March

5

19, 2020, the home study in Georgia was completed, and on March 23, 2020, the ICPC supervisor informed the social worker that the ICPC was completed and approved for the paternal grandmother. The social worker reported she informed the paternal grandmother that due to COVID-19 and the shelter-in-place order, all visitation was limited to virtual visitation and that the juvenile court would be informed of the approval at the next hearing. That information was shared on June 23, 2020, due to the court closure as a result of the COVID-19 pandemic. Also, due to the COVID-19 pandemic, the trial was again continued and set for September 1, 2020.

On September 1, 2020, the Department prepared and filed its report for the review hearing. There had been a Child Family Team Meeting (CFT) on July 31, 2020, on behalf of the appellant, to discuss the minor's placement with the paternal grandmother. CFT discussed the minor's attachment to his caregivers and his relationship with the paternal grandmother. The paternal grandmother expressed her frustration over feeling as if she had not been given a chance to have placement of the minor, and concerns were raised over the paternal grandmother's relationship with the appellant, and lack of contact. It was noted that the minor was appropriately situated and appeared to have a significant bond with the caregivers and all other children in the home. The caregivers reported having an open line of communication with all maternal and paternal family members and had been insistent on having a referral sent to consortium to ensure that the minor stayed connected with relatives and parents, if deemed appropriate.

Appellant reported at the meeting he had a good relationship with the minor's caregivers, and he recognized the minor's attachment to them. Appellant also reported he knew that the minor would be safe with the paternal grandmother and found it difficult to choose one placement over the other, but stated he was not thrilled with the idea of the minor being moved again and residing out of state. It was decided that the caregivers would work together with the paternal grandmother to arrange virtual visits on the

6

weekends, separate from the appellant's visits, and that the minor would be available if the paternal grandmother could come to California for a visit.

The report also contained a full assessment of placement with the paternal grandmother pursuant to section 361.3. It was reported the paternal grandmother was approved through Georgia's ICPC process on March 19, 2020, and the evaluation included obtaining criminal background/child abuse clearances on all adults living in the home, a home environment assessment, and an assessment on their ability to provide basic care and supervision. The social worker indicated that the minor had been in placement with the current resource parents since March 12, 2019, and had developed a significant bond with his caregivers and the other children in the home. The minor had been able to maintain virtual and in-person visits with both parents, as well as the paternal and maternal grandparents, and the caregivers were supportive to maintaining family connections.

As to the parents' wishes regarding placement, it was reported mother expressed on multiple occasions that if the minor were unable to be returned to her care, she would prefer that he remain placed with the current caregivers. Mother expressed her observations of the minor's attachment with the caregivers and the other children in the home and felt that if the minor were placed with the paternal grandmother, she would not be permitted to see him. Appellant expressed that he was conflicted with his wishes for placement of the minor and felt that the minor would be well cared for if placed with the paternal grandmother but did not feel it was in the minor's best interest to be moved again and taken out of the home, where he had developed a significant bond with the caregivers. Appellant had a good relationship with the caregivers and liked being able to visit the minor in person.

There were no concerns noted about the paternal grandmother and grandfather's criminal history, good moral character, cultural continuity, or their ability to exercise proper care and control of the minor. The paternal grandmother also indicated she was

7

able to provide permanency in the form of adoption of the minor, and she had a consistent support system. Nonetheless, the Department assessed that placement of the minor in the home of the paternal grandmother was not in the best interest of the minor, as he had been placed in the current caregivers' home for approximately 18 months and had a significant attachment to them and the other children in the home. While the paternal grandparents had the resources, support, and commitment to provide care for the minor, the Department noted the significant distance and the fact that the grandparents had not seen appellant for over five years. The Department was concerned that maintaining visitation with parents and the maternal grandparents would be difficult if the minor were to be placed with the paternal grandparents in Georgia.

Also, on September 1, 2020, appellant filed a section 388 petition for modification requesting that, should the court not place the minor with mother, the minor be placed with the paternal grandmother in Georgia.[3] At appellant's request, the juvenile court set appellant's petition for modification for a contested hearing to be heard in conjunction with the upcoming review hearing.

Trial began on September 16, 2020. All parties agreed to first conduct the section 366.21, subdivisions (e) and (f) review hearings and then, should the court not place the minor with mother, proceed with appellant's section 388 petition for modification. At the conclusion of mother's testimony, the juvenile court terminated mother's reunification

---

[3] Confusingly, as prepared and filed, the petition states the order it seeks to modify is the December 18, 2018 disposition order removing the minor from appellant and placing him with mother under supervision and states the new order it was requesting was "[i]f the child is removed from the mother[, appellant] is requesting the court to place his son in the care of the paternal grandmother." By the time the petition was filed on September 1, 2020, however, the minor had been ordered removed from mother since August 2019, based on the March 2019 section 347 petition. Thus, we construe the petition as it was presented to the juvenile court to request placement with the paternal grandmother if the minor was not to be returned to mother.

8

services, continued the minor in out-of-home placement, and set the matter for a section 366.26 hearing to determine the appropriate permanent plan for the minor. The court then conducted the contested hearing on appellant's petition for modification.

After hearing testimony from the paternal grandmother, the juvenile court ruled on appellant's petition for modification. The juvenile court went through the history of the case and noted that, after agreement by all parties, the court heard the section 388 petition regarding placement of the minor with the paternal grandmother after the review hearing regarding mother's reunification services. The minor could not have been placed with the paternal grandmother prior to the original disposition in 2018, because she did not have a completed ICPC. The minor was placed with mother after the jurisdiction hearing and, at that point, the ICPC for the paternal grandmother was put on hold. Subsequently, after the minor was again detained and the Department requested another ICPC of the paternal grandmother from Georgia on July 12, 2019, which was not completed until March 2020. The juvenile court discussed whether the relative placement preference applied after disposition and/or after termination of reunification services, and it determined that the relative placement preference does not apply after reunification services are terminated.

The juvenile court then noted that the paternal grandmother had no prior relationship with the minor, had never met him in person, and had only recently begun virtual visits. It also noted she had not known the juvenile court had found by a preponderance of the evidence that her son was responsible for the minor's injuries and expressed concern that the minor could be exposed to more violence by appellant if the paternal grandmother cared for him and allowed appellant around the child. The juvenile court then found that, even if the relative placement preference did apply, the court would have concerns about placing the minor with the paternal grandmother because the parents' ability to visit the minor would be frustrated if the minor resided in Georgia. The juvenile court further noted that all parties were in universal agreement that the

9

current caretakers had provided the minor with stability and continuity for the last 18 months and that the passage of time was a significant factor in a minor's life. Having emphasized that the overriding concern was not the relatives' interests, but the interest of the minor, the juvenile court found it was not in the minors' best interest to be placed with the paternal grandmother at that time. It noted, however, that the court would reconsider placement should new facts be presented.

## II.  DISCUSSION

*A.      Jurisdictional Challenge*

Appellant contends there was insufficient evidence to support the juvenile court's initial jurisdictional findings. We do not address the merits of this challenge to the sufficiency of the evidence because the issue is not properly raised in the instant appeal.

Appellant acknowledges that he had filed a previous appeal from the jurisdictional and disposition orders—case No. C088645. That case was dismissed after appellant failed to file an opening brief and the remittitur was issued on July 2, 2019. Appellant now requests this court address and consolidate the instant appeal from the juvenile court's October 20, 2020 order denying his section 388 petition for modification with his previously dismissed appeal and address his challenge to the juvenile court's December 4, 2018 jurisdictional findings. He argues we should address the merits of his argument relating to jurisdiction in the instant appeal because this court denied him due process in his previously dismissed appeal by not appointing appellate counsel to represent him, as he had initially requested on his notice of appeal.

We directed the parties to file supplemental briefs "addressing whether the proper remedy for any failure to be appointed counsel in case number C088645 is not to consolidate case number C088645 with the instant appeal, or to permit appellant to raise issues relating to jurisdiction and/or disposition in the instant appeal, but rather by a motion to recall the remittitur in case number C088645 based on an evidentiary showing, with declarations by appellant and Central California Appellate Program (CCAP) staff,

10

that appellant was neither served with notice of the impending dismissal of his appeal in case number C088645 by this court nor notified by CCAP of the right to, or opportunity for, appointment of counsel."

Appellant's supplemental brief did not present any authority or argument that the appropriate remedy for a due process violation as alleged in his opening brief is to consolidate the dismissed appeal with the instant appeal or address here the arguments he failed to raise in his previous appeal. Instead, appellant attached evidence to his supplemental brief, in the form of declarations by appellant and CCAP staff, purporting to establish that he was neither notified by CCAP of the right to, or opportunity for, appointment of counsel nor served with notice of the impending dismissal of his appeal in case No. C088645 by this court.

First, we note that, as we suggested in our order directing supplemental briefing, the appropriate remedy for any due process violation caused by the failure to be appointed counsel in case No. C088645 is not to consolidate case No. C088645 with the instant appeal, or to permit appellant to raise issues relating to jurisdiction and/or disposition in the instant appeal, but rather by a motion to recall the remittitur in case No. C088645, based on an appropriate evidentiary showing.

The time for appeal of an order made in a dependency case is 60 days from the date of the order's pronouncement in open court. (*In re Alyssa H.* (1994) 22 Cal.App.4th 1249, 1253-1254.) If no timely appeal is taken from a dependency order, the order is final and binding, the issues determined by the order are res judicata, and the order may not be attacked on appeal from a later appealable order. (*In re S.B.* (2009) 46 Cal.4th 529, 532; *In re Matthew C.* (1993) 6 Cal.4th 386, 393.) The dismissal of appellant's previous appeal for failure to file an opening brief is akin, in this regard, to the failure to appeal. If that appeal was improvidently dismissed, appellant should file a motion to recall the remittitur in that case, not file evidence in connection with a brief in this case.

11

In the alternative, appellant asks this court to treat his supplemental brief as a motion to recall the remittitur in case No. C088645, based on the declarations attached. Significantly, he did not file the motion in case No. C088645, which is where it must be filed for consideration in that case. But even if we were to consider it in that regard, we reject it on its merits.

Appellant submitted a declaration from a staff attorney and panel manager for the Central California Appellate Program (CCAP), a nonprofit organization that aids this court in the appointment of counsel for indigent appellants. She declared that, according to the CCAP case file, appellant's previous appeal was filed on January 3, 2019. CCAP sent notices to appellant on January 16, January 29, and March 11, 2019, to the address listed on the notice of appeal and supporting documentation list, which was the same address appellant's trial counsel had provided in background information received by CCAP on February 15, 2019. On March 12, 2019, CCAP records indicate it was informed of a new address. It then sent two separate notices to that address on March 12 and 18, 2019. Those notices were returned to sender due to an insufficient address and being unable to forward, respectively. On March 27 and April 30, 2019, CCAP sent notices to the second address it had received, this time including an apartment number not previously included. CCAP records do not indicate any response or returned mail from the March 27 and April 30 notices.

Appellant's declaration states that he did not receive any communications in his prior appeal (case No. C088645) regarding the need to file paperwork. He stated that during the dependency case, he had moved several times and provided his current address, which we note is not the same as either address referenced in the declaration provided by CCAP's attorney (but is the same address he put on his change of address filed in the instant case on January 27, 2021).

It is clear from the declarations provided by appellant that recall of the remittitur in case No. C088645 based on a violation of appellant's due process and right to

12

appointed counsel is not warranted.  The supporting declarations appellant provides do not, as alleged, support his position that he was improperly denied appointment of counsel in case No. C088645.  Instead, they establish that appellant, not CCAP or this court, failed to do what is required in order for appellant to be represented by appointed counsel on appeal.  Specifically, after CCAP sent numerous notices to appellant at the address both he and his trial counsel provided for appellant to request appointed counsel.  Appellant did not respond to those notices.

That appellant may have "moved several times" without notifying this court as required by law does not transmute his failure to receive the notices from CCAP or this court into a violation of his due process rights.  Appellant had a duty to file and serve written notice of his change of address with this court pursuant to California Rules of Court, rule 8.32 (b)(2).[4]  This he did not do.  The docket in case No. C088645 reflects no change of address filed by appellant.  Appellant's due process rights were not violated and recall of the remittitur is not warranted.  Appellant's contentions of error relating to the juvenile court jurisdictional findings are not properly before us in this appeal and we do not address them.

B.      *Relative Placement Request*

Appellant contends the juvenile court erred in denying his section 388 petition for modification, which requested that, should the court order the minor's continued removal

---

[4]  California Rules of Court, rule 8.32 provides:  "(a) In any case pending before the court, the court will use the mailing address, telephone number, fax number, and e-mail address that an attorney or unrepresented party provides on the first document filed in that case as the mailing address, telephone number, fax number, and e-mail address of record unless the attorney or unrepresented party files a notice under (b).  [¶]  (b) (1) An attorney or unrepresented party whose mailing address, telephone number, fax number, or e-mail address changes while a case is pending must promptly serve and file a written notice of the change in the reviewing court in which the case is pending."

from mother, that the minor be placed with the paternal grandmother. We reject his claim of error.

Appellant's opening brief accuses the juvenile court of having "purposefully circumvented the relative placement preference by holding [appellant's] section 388 petition after it terminated reunification services." He argues doing so was unfair, improper, and frustrated the entire purpose of the relative placement preference. But appellant ignores the fact that he filed the section 388 petition on the day set for the review hearing and it was at his request that the juvenile court set the contested hearing to be heard in conjunction with the continued review hearing. He also ignores the significant fact that he expressly agreed to holding the review hearing before the hearing on his petition. Thus, he cannot now be heard to complain about the order of the hearings. (*In re Brandon M.* (1997) 54 Cal.App.4th 1387, 1401; *People v. Hines* (1997) 15 Cal.4th 997, 1040; *People v. Booker* (2011) 51 Cal.4th 141, 161.)[5]

We now address argument that the juvenile court erred by failing to order placement of the minor with the paternal grandmother pursuant to his section 388 petition for modification. The section 361.3 relative placement preference requires "preferential consideration" be given to a relative's request for placement of a dependent child.

---

[5] We are concerned about the briefs filed by appellant's counsel in this case. In addition to the unfounded accusation that the court "purposefully circumvented the relative placement preference," appellant's opening brief accuses the juvenile court of "willful ignorance of the laws" and "willful ignorance of the facts clearly set forth in the record," and purports to support these assertions with more accusations such as "the court pretended that it didn't know the paternal grandmother had applied for placement prior to [the minor's] detention." Review of the court's remarks fails to substantiate appellant's accusations. Instead, it shows the court, in considering whether the relative placement preference applied, noted that the minor could not be placed with the paternal grandmother prior to the original disposition because the ICPC was not approved until March 2020. Disparaging the trial court, by asserting it deliberately chose not to follow the law, without evidentiary support is potentially contemptuous. (*In re White* (2004) 121 Cal.App.4th 1453, 1478.)

(§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) "Preferential consideration 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*In re Antonio G.* (2007) 159 Cal.App.4th 369, 376.) "[T]he statute express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320.) But this command is not a guarantee of relative placement. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

Appellant argues that he was entitled to a relative placement hearing under section 361.3, based on the fact that the juvenile court set a relative placement hearing back on August 23, 2019, and it was never heard.[6] He also argues he was entitled to consideration of his relative placement request pursuant to his later filed section 388 petition—which of course, he received. The thrust of his contention appears to be that the juvenile court was required to consider whether to place the minor with the paternal grandmother in accordance with section 361.3, despite the fact and timing of his section 388 petition.

"The relative placement provisions in section 361.3 apply when a child is taken from [his or] her parents and placed outside the home pending the determination whether reunification is possible. [Citation.] The relative placement preference also applies to placements made after the dispositional hearing, even when reunification efforts are no longer ongoing, whenever a child must be moved." (*In re A.K.* (2017) 12 Cal.App.5th

---

[6] Appellant complains that this hearing was dropped from the calendar without explanation on February 20, 2020, but we note that he did not seek timely relief in the juvenile court or in this court.

15

492, 498.) It is less clear whether, and under what circumstances the relative placement preference applies after reunification services have been terminated and when no new placement of the child is required. (See *In re Stephanie M., supra,* 7 Cal.4th at p. 321; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1300; *In re Joseph T., supra,* 163 Cal.App.4th 787, 795; *In re Isabella G.* (2016) 246 Cal.App.4th 708, 723.)

Whether consideration of placement with the paternal grandmother in this case is properly determined by way of the relative placement preference in section 361.3 or pursuant to section 388, as filed by appellant, is a distinction without a difference here. Section 361.3 requires that the court consider a number of factors, the first of which is "[t]he best interest of the child." (§ 361.3, subd. (a)(1).) Section 388 similarly requires consideration of the minor's best interests. (§ 388, subd. (d).) Here, after reviewing the Department's report, listening to the paternal grandmother's testimony, and hearing argument from counsel, the juvenile court found placement with the paternal grandmother was not in the minor's interest at that time. We review that decision under either subdivision for abuse of discretion, and we will not disturb the decision unless it exceeds the bounds of reason. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067; *In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

In any event, while the juvenile court did not believe the relative placement preference to apply at this stage of the case, it is evident it nonetheless considered the statutory factors in making its decision. In assessing a relative placement under section 361.3, the statute provides for several factors to be considered by the Department and juvenile court. These criteria include, but are not limited to: the child's best interest (§ 361.3, subd. (a)(1)); the wishes of the parent and the relative (*id.*, subd. (a)(2)); the good moral character of the relative and any other adults living in the home (*id.*, subd. (a)(5); the nature and duration of the child-relative relationship, and the relative's desire to care for the child and provide permanency if reunification is unsuccessful (*id.*, subd.

16

(a)(6)); the relative's ability to provide a safe, secure, and stable home environment, as well as the necessities of life; to protect the child from the parents; and to facilitate reunification, relative visitation, and implementation of the case plan (*id.*, subd. (a)(7)-(8)).

Here, the juvenile court specifically mentioned the nature and duration of the minor's relationship with the paternal grandmother—noting that she did not have a prior relationship with the minor, had never met the minor in person, and had only recently begun visitation. It also expressed concern that, even if the relative placement preference applied, placement of the minor in Georgia would frustrate the parents' ability to visit the minor. The remaining factors were undisputed and all analyzed in the Department's report, which noted: (1) mother preferred the minor remain placed with the caretakers over the paternal grandmother (appellant was reported to be conflicted until the filing of his section 388 petition on September 1, 2020); (2) no concerns surrounding the moral character of the paternal grandmother or anyone in her home; and (3) no concerns with cultural continuity or with the paternal grandmother's ability to care for and control the minor.

Yet, although the section 361.3 statutory factors are important, the "linchpin" is always the best interests of the child. (*In re Robert L.*, *supra*, 21 Cal.App.4th at p. 1068.) And here, the parties were in "universal agreement that the current caretakers have provided [the minor] with stability and continuity in the last 18 months." It was reported that the minor had been placed in the caretakers' home since he was removed from mother on March 12, 2019, was well-adjusted, and had developed a significant bond with the caretakers and the other children in the home.

As set forth above, the juvenile court found that it was not in the minor's best interest to be placed with the paternal grandmother at this time. "The overriding concern of dependency proceedings . . . is not the interest of extended family members but the interest of the child. '[R]egardless of the relative placement preference, the fundamental

duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.'  [Citation.]  Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests.  [Citation.]  The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of [his or] her best interests."  (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)  While appellant argues that the paternal grandmother's home was appropriate and the minor "would adjust to his family," we find no abuse of discretion.

### III.  DISPOSITION

The orders of the juvenile court are affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

MURRAY, Acting P. J.

/S/

_____

KRAUSE, J.

18