Filed 4/12/22  In re B.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re B.R. et al., Persons Coming Under the Juvenile Court Law. | C094639 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJVDP20160000359) |

C.T., maternal grandmother (grandmother) of the minors, B.R., Y.T., L.W., and J.W., appeals from the juvenile court's order denying her request that the court place the minors with her.  (Welf. & Inst. Code, §§ 361.3, 388, 395; statutory section citations that follow are to the Welfare and Institutions Code.)  We affirm the juvenile court's orders.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

On September 11, 2020, grandmother filed a relative information form, identifying four minors, B.R., Y.T., L.W., and J.W., noting three of the minors had special needs or disabilities. Grandmother noted that the minors had not seen the maternal family in some time and requested visits and placement of the minors with family, listing two maternal aunts and the minors' adult half sibling as relatives who would assist with their care.

On October 26, 2020, grandmother filed a section 388 petition requesting that the court change its placement order and place the minors with her. In support of her request, grandmother stated that the San Joaquin County Human Services Agency (Agency) completed an evaluation and that her home was approved, but the Agency chose not to place the minors in her care.

In her petition, grandmother stated that placement of the sibling minors in separate foster homes caused them emotional harm. Grandmother stated that she had placement of the minors, after they were removed from the mother, T.C. in a prior 2016 dependency case. In that case, mother was able to successfully reunify with the minors and they were returned to her care. Grandmother argued that there was a statutory presumption that placement with a relative was in the best interest of the minors and, because of the prior placement of the minors, it would not be detrimental to their physical and emotional well-being to place them in her care again. She also indicated she was prepared to provide permanence for all four minors through adoption or guardianship, should reunification services be denied or reunification efforts fail.

On November 4, 2020, mother filed a response in support of grandmother's section 388 petition. Mother's response stated that the minors were detained on or about May 28, 2020, following a petition filed under section 300 (a), (b), (f), (g), and (j). Mother and father were incarcerated. A fifth minor, A.W., a half sibling to L.W. and J.W., was also removed with the subject minors and placed in a separate foster home.

Grandmother was a licensed foster home and provided temporary care when the subject minors were removed in the prior 2016 dependency case. Mother argued that there were changed circumstances because the minors were placed in separate foster homes. Mother also argued that it would be in the best interest of the minors to be placed with grandmother, because she was a relative who cared for them in the past and the Agency intended to recommend that reunification services not be provided to her and father. Mother argued that if grandmother could be trusted with the safety of foster children, she could be trusted with her grandchildren. Mother requested that the court grant grandmother a placement hearing.

On November 16, 2020, the Agency filed a response opposing the placement of the minors with grandmother. The Agency argued that grandmother's section 388 petition failed to demonstrate a change of circumstances and that it was in the best interest of the minors and the petition was premature because section 388 is inapplicable prior to disposition.

On November 18, 2020, the minors' counsel also opposed grandmother's section 388 petition. The minors' counsel agreed with the Agency that grandmother's petition did not show a change of circumstance or that the change was in the minors' best interest. The minors' counsel also argued that the preferential consideration for placement under section 361.3 did not mean the relative would actually have the minors placed in their home, but meant that the relative would be the first placement considered. The minors' counsel noted that the minors were witnesses to the homicide of their step sibling, B.W., which mother attempted to cover-up by convincing the minors to tell law enforcement that the deceased minor was with her biological mother during the time of her abuse and death. The minors' counsel argued that if minors were placed with the maternal grandmother, she may also attempt to convince, encourage or influence the minors' testimony. The minors' counsel argued that the minors "must be insulated from any possible influence prior to jurisdiction and the criminal resolution of this matter in order

3

to prevent the weakening of their testimony." The minors' counsel also argued that grandmother's intention was not to keep all of the siblings together, as she did not request placement of A.W., who was the paternal half sibling of J.W. and L.W.

On November 30, 2020, the juvenile court denied the 388 petition as untimely. At the subsequent December 3, 2020, contested jurisdictional hearing, the court found that the Agency made reasonable efforts to finalize the permanency plan for the minors. On May 10, 2021, the Court held a contested hearing regarding placement of the minors to consider grandmother's placement requests and heard testimony from grandmother and the social worker. Grandmother testified that she had placement of B.R., along with an older half sibling, in a 2009 dependency matter and placement of all four subject minors in a 2016 dependency matter. She testified that she believed the minors were removed from mother and father because a third-party abused B.W. Grandmother testified that she had reservations about the minors in her care returning to their parents following the 2016 dependency matter, but did not alert the Agency because "they never asked." Grandmother testified that during holiday visits, she did not observe that B.W. had any bruising, or a sunken face or a protruding bloated belly. Grandmother also indicated that she did not believe some of the allegations against her daughter regarding B.W., including that she was forced to drink toilet water. Grandmother testified that she became a licensed foster parent in 2016, had fostered three other children, and currently has a foster child in her care. She testified that the minors should be placed with her because the entire family would participate in providing care for the minors.

The social worker, Jaella Conway, testified that grandmother contacted the Agency for placement of the minors. Conway's testimony showed that B.R. and Y.T. were in placement together, J.W. and L.W. were placed together, and A.W. was placed in her former foster home. Conway testified to supervising visits between grandmother and J.W. and L.W. She explained that during the visits, the minors "didn't seem that excited to see her" at first but warmed up as the time progressed and that the minors separated

4

easily from grandmother at the conclusion of the visits. Conway testified that L.W. made a spontaneous statement to grandmother regarding his mother and father being in jail for "killing" B.W. Conway testified that L.W. told grandmother that J.W. wanted to move to a new home, but when asked for clarification, Conway learned that the foster parents moved to a new home and the minor wanted to return to their previous residence "because he liked playing out there." Conway also testified that the minors never asked to be placed with grandmother or any other relative, there were no concerns with the minors' placements raised by their therapists, and all four minors had stated their desire to remain in their current placements.

Conway testified that there were concerns about grandmother's ability to be protective of the minors because she and other family members did not attempt to intervene prior to B.W.'s death and because grandmother denied knowledge of the mother's continual abuse of the children in her home. Conway also testified to being concerned that grandmother could not maintain boundaries between the minors and mother while she was in jail because of the ongoing family contact with mother. She testified that, during a conversation with grandmother in July 2020, grandmother stated that she read through the case documents and believed them to be horrible acts but she and other family members remained unable to acknowledge the mother and father's actions in the cause of B.W.'s death.

Conway asked grandmother if she had any concerns about the minors in mother's care, and grandmother said that she told the mother that there were "too many kids in the house" and "they should give [B.W.] back" and refused to provide clarification for her statement. Grandmother's statement was concerning to her because it lacked any acknowledgment of what the mother and father did to B.W. and seemed as if grandmother believed none of the events would have occurred if B.W. were outside of the home. Conway testified that grandmother's support of the mother was disconcerting because of the severity of the abuse and torture by mother and father and the resulting

5

death of B.W. Conway stated that there were also concerns that with the ongoing criminal case and that relatives may influence the minors' statements in protection of the mother. Conway testified that grandmother's statement that she did not see the minors from September 2019 to May 2020 were concerning because of the history of abuse in the home and grandmother's stated concerns with the minors returning to mother; Conway opined that efforts should have been made to have someone check on the well-being of the minors.

At the conclusion of testimony, the juvenile court heard arguments from the parties and took the matter under submission. The court was then advised that the hearings under section 366.26 for the minors were set for August 3, 2021, as to B.R. and Y.T. and August 25, 2021, as to J.W. and L.W.

On June 15, 2021, the court issued a written ruling regarding grandmother's request for placement of the minors with her under section 388. The court stated that B.W.'s injuries were "extensive from head to toe over an extended period of time while the siblings were present in the home. The surviving siblings also suffered continuous physical, verbal and emotional abuse during this period" from mother and father. The court noted that grandmother was a licensed foster care provider and previously fostered the subject minors in the 2016 dependency case, which also stemmed from significant physical abuse by mother and father. The court noted that grandmother claimed to have a close relationship with the minors and visited regularly until 2019 when a disagreement with the mother occurred and visits became sporadic. The court acknowledged the significant struggles of B.R. and Y.T. and the improvement from the minors in placement and the services put in place to process the significant trauma. The court stated that J.W. and L.W. also experienced trauma which resulted in severe night terrors. The court also noted that the minors were also stable in placement and received the support they required, were thriving in their placements, and continued to work on their ongoing emotional and educational issues.

6

The court explained that the relative preferential consideration was not a guarantee of placement but required the court to consider relative placement first. The court also stated that it had to consider the best interest of the minors and the burden of proof was on grandmother to demonstrate the requested change was in their best interest. The court considered the emotional and psychological damage suffered by the minors over the past six years.

The court noted that the minors' needs were being met and they were reportedly thriving in their placements. The court also noted concerns about potential undue influence regarding the pending criminal case if the minors were placed with grandmother. The court also observed that B.R. and Y.T. were made aware of the placement request by grandmother and wished to remain with their current caregivers indefinitely and did not wish to reside with grandmother or any other relatives. Accordingly, the court found that a change in placement at this time would be detrimental to the minors and that it was in their best interest to remain in the stable and nurturing environments in which they were currently placed.

Grandmother filed a timely notice of appeal.

## DISCUSSION

Grandmother contends the juvenile court erred in denying her request of placement of the minors with her. She argues it was an abuse of the juvenile court's discretion to deny her placement under section 361.3 and find that placement with her was not in the best interests of the minors. She contends the court's failure to consider the factors in section 361.3 was reversible error. We reject her claims of error.

The section 361.3 relative placement preference requires "preferential consideration" be given to a relative's request for placement of a dependent child. (§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd.

7

(c)(1).)  "Preferential consideration 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*In re Antonio G.* (2007) 159 Cal.App.4th 369, 376.)  "[T]he statute express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320.)  But this command is not a guarantee of relative placement. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

Grandmother argues that the juvenile court was required to consider whether to place the minors with her in accordance with section 361.3, despite the fact and timing of her section 388 petition.  "The relative placement provisions in section 361.3 apply when a child is taken from [his or] her parents and placed outside the home pending the determination whether reunification is possible.  [Citation.]  The relative placement preference also applies to placements made after the dispositional hearing, even when reunification efforts are no longer ongoing, whenever a child must be moved." (*In re A.K.* (2017) 12 Cal.App.5th 492, 498.)  It is less clear whether, and under what circumstances the relative placement preference applies after reunification services have been denied or terminated but when no new placement of the child is required.  (See *In re Stephanie M., supra,* 7 Cal.4th at p. 321; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1300; *In re Joseph T., supra,* 163 Cal.App.4th 787, 795; *In re Isabella G.* (2016) 246 Cal.App.4th 708, 723.)

Whether consideration of placement with the maternal grandmother in this case is properly determined in accordance with the relative placement preference in section 361.3 or pursuant to section 388, as filed by grandmother, is of no moment here.  Section 361.3 requires that the court consider a number of factors, the first of which is "[t]he best interest of the child." (§ 361.3, subd. (a)(1).)  Section 388 similarly requires consideration of the minor's best interests.  (§ 388, subd. (d).)

8

Here, after reviewing the Agency's report, listening to grandmother and the social worker's testimony, and hearing argument from counsel, the juvenile court found placement with grandmother was not in the minors' interest at that time. We review that decision under either subdivision for abuse of discretion, and we will not disturb the decision unless it exceeds the bounds of reason. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067; *In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

In any event, while the juvenile court cited section 388 rather than 361.3 in its ruling on mother's request, it is evident it nonetheless considered the pertinent statutory factors in making its decision. In assessing a relative placement under section 361.3, the statute provides for several factors to be considered by the Agency and juvenile court. These criteria include, but are not limited to: the child's best interest (§ 361.3, subd. (a)(1)); the wishes of the parent and the relative (*id.*, subd. (a)(2)); the good moral character of the relative and any other adults living in the home (*id.*, subd. (a)(5)); the nature and duration of the child-relative relationship, and the relative's desire to care for the child and provide permanency if reunification is unsuccessful (*id.*, subd. (a)(6)); the relative's ability to provide a safe, secure, and stable home environment, as well as the necessities of life; to protect the child from the parents; and to facilitate reunification, relative visitation, and implementation of the case plan (*id.*, subd. (a)(7)-(8)).

Here, the juvenile court specifically noted grandmother's wishes to have four of the surviving five siblings placed with her and claim to have a close relationship with the children. The court also observed, regarding the nature and duration of the child-relative relationship, that grandmother visited regularly until 2019, when grandmother and the mother had a falling out, and then her visits with the minors were more sporadic. The court also noted facts relevant to grandmother's moral character, including the fact that she was a licensed foster care provider and had previously fostered these minors. The court also discussed facts regarding grandmother's ability to provide a safe and stable

9

home environment and protect the children from the parents, including its concern regarding possible undue influence on the children regarding their participation in the criminal case if placed with grandmother. Indeed, the social worker, Conway, testified that she was concerned about grandmother's ability to be protective of the minors because she and other family members did not attempt to intervene prior to B.W.'s death and because grandmother indicated having no knowledge of the mother's continual abuse of children in her home. Grandmother made a disturbing comment that, prior to B.W.'s death, she told the mother that there were "too many kids in the house" and "they should give [B.W.] back." Grandmother also indicated that she did not believe some of the allegations against her daughter regarding B.W., including that she was forced to drink toilet water. This testimony supported the court's findings.

Further, although the section 361.3 statutory factors are important, the "linchpin" is always the best interests of the child. (*In re Robert L.*, *supra*, 21 Cal.App.4th at p. 1068.) Here, the court noted that the minors all suffered severe trauma from the abuse in the home which resulted in severe night terrors and academic struggles and severely impacted their mental and emotional well-being. The court found that all of the minors' needs were being met in their respective placements and noted the significant improvement in all areas. The court also considered grandmother's testimony that she had a close relationship with the minors but noted that her visits with them in recent years were sporadic and did not include all of the minors. The record demonstrates that the minors did not share a strong bond with grandmother and were completely content to separate from her after visits and suffered no adverse behaviors from not being in her care. Indeed, as the court noted, B.R. and Y.T. were made aware of the placement request by grandmother and expressed that they did not wish to reside with grandmother or any other relatives.

As set forth above, the juvenile court found that it was not in the minors' best interest to be placed with grandmother at this time. "The overriding concern of

10

dependency proceedings . . . is not the interest of extended family members but the interest of the child.  '[R]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.'  [Citation.]  Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests.  [Citation.]  The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of [his or] her best interests."  (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)  We find no abuse of discretion.

## DISPOSITION

The orders of the juvenile court are affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

DUARTE, J.

11