Filed 2/6/24  In re A.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.V.,<br><br>Defendant and Appellant. | F086621<br><br>(Super. Ct. Nos. 21CEJ300368-1, 21CEJ300368-2, 21CEJ300368-3, 21CEJ300368-4, 21CEJ300368-5)<br><br>**OPINION** |

## THE COURT\*

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

Appellant A.V. (mother) appeals the denial of her Welfare and Institutions Code[1] section 388 petition without a hearing. Mother's petition sought the reinstatement of family reunification services involving her five minor children (collectively, the children). While mother's notice of appeal references this specific ruling, the notice also references a later ruling involving permanent plans recommending adoption for three of the children. Mother has chosen to limit her appeal to the earlier ruling on the section 388 petition as it applies to her two sons, M.V.1, age 16, and M.V.2, age 13, who were placed in long-term foster care. Following our review, we affirm the denial of mother's section 388 petition.

## PROCEDURAL SUMMARY

On October 12, 2021, a juvenile dependency petition was filed pursuant to section 300, alleging mother's five minor children should be declared dependents of the juvenile court. The petition specifically alleged there was a substantial risk of harm to the children due to mother's substance abuse, which "negatively affect[ed] her ability to provide regular care, supervision and protection for her children." The petition further stated mother tested positive for methamphetamine and marijuana on October 6, 2021, and that her ongoing drug use "contribute[d] to her inability to maintain a safe and stable home environment for the children," resulting in their current status as unhoused.

A detention report filed by the Fresno County Department of Social Services (department) on October 13, 2021, recommended the juvenile court order the children detained from mother's custody. A formal order adopting this recommendation was entered by the court on that same date. At the jurisdictional hearing held on December 8, 2021, the court found the children to be persons described by section 300,

---

[1] All further statutory references are to the Welfare and Institutions Code.

subdivision (b).  As a result, all orders involving the placement of the children with the department remained in effect.

At the disposition hearing held on February 23, 2022, the juvenile court found the children qualified as dependents under section 360, subdivision (d).  The court further ordered that family reunification services be offered to mother for a period of 12 months, which could be extended up to 18 months.  The court advised mother, however, that because one of the children was under the age of three, these services could be terminated at six months if she failed to participate "regularly" and make substantive progress.  The court also advised mother that if she failed to reunify with her children, her parental rights could be terminated.

Following the six-month status review hearing held on September 21, 2022, the juvenile court stated all orders would remain in effect, and advised mother that if the children could not be returned to her by the next review hearing, a section 366.26 petition could be initiated to "determine a permanent plan for the children of adoption, legal guardianship, or [long-term] foster care."  The court also found the current placements for the children were appropriate and that there was "a substantial probability that the children may be returned to [mother] before the next review hearing."  However, on November 30, 2022, the department recommended terminating reunification services for mother, and further recommended scheduling a section 366.26 hearing to establish a permanent plan for the children.

Following at least two continuances, the juvenile court finally held the 12-month review hearing on March 3, 2023.  The department's status review report and an addendum report submitted for that hearing stated mother failed to make significant progress toward completing court-ordered services, and that the efforts she actually made were "minimal."  First, the reports documented how mother had not participated in visits with her children during October and November 2022, and had not contacted the

3

department to reschedule these visits. The reports further noted that while mother completed a parenting class and a substance abuse evaluation, she had not completed other recommended treatments or assessments. Also, while mother registered for random drug testing, she was dropped from this program twice for noncompliance. At the end of the review hearing, the court adopted the recommendations of the department to terminate reunification services for mother, to set a combined section 360.30 review hearing and a section 366.26 hearing to establish a permanent plan of adoption for two of the children, to provide a permanent plan for another child through a tribal customary adoption, and to provide long-term foster care for M.V.1 and M.V.2.

On June 9, 2023, mother filed a petition pursuant to section 388, seeking the reinstatement of family reunification services for all five of her children. To support the petition, mother cited the fact she completed two parenting classes, was in a residential drug treatment program, and had received recognition for meeting the requirements of that program.[2] Mother stated her request was in the best interests of her children as there was "a strong bond among all of [her] children," and with her. The juvenile court denied the petition on June 12, 2023, stating the request did not state new evidence or establish a change of circumstances. No hearing was set or held on this section 388 petition. Mother now appeals the denial of her section 388 petition with respect to only M.V.1 and M.V.2, who have been placed in long-term foster care.

### FACTUAL SUMMARY

The events leading up to the filing of the juvenile dependency petition in this case started with a wellness check on M.V.2, who was living with an uncle at the time. After the circumstances that led to the wellness check were found not to be true, the department learned mother and her four other children were living with a friend. When a social

---

[2] Copies of certificates documenting mother's participation and completion of these programs were attached to the petition.

4

worker finally met with mother on October 5, 2021, she explained she was living with the friend while looking for housing, and that all the children were attending school online. On October 6, 2021, the department was informed mother tested positive for methamphetamines and marijuana.

During the 12-month status review hearing, held on March 3, 2023, mother testified her children were removed from her custody in October 2021 because of homelessness and drug use. Mother acknowledged she had used drugs off and on over the years, first using marijuana when she was 13 years old, and methamphetamines when she was 14 years old. Mother explained she became sober on her own between 2011 and 2013, and again for five years starting in 2014. The record also shows mother received voluntary family maintenance services in 2010, which included substance abuse treatment.

Mother's sobriety ended in 2019, after she and her children lost their housing. The record is not complete on where mother lived with her children between 2019 and October 2021, but there was some mention of a variety of homes belonging to friends and relatives, along with periodic motel stays.

In her testimony, mother detailed the variety of programs she was offered after her children were removed from her custody in October 2021. While mother completed some of these programs, she blamed the lack of transportation for her inability to complete others. Mother was specifically offered a substance abuse outpatient program, which she participated in initially. Mother's sobriety ended in June 2022, which she attributed to the lack of progress with visitation, the loss of her grandmother, and the end of a long-term relationship. Although mother was still participating in an outpatient substance abuse program, she relapsed again in August 2022. Soon thereafter, mother was discharged from the program following a conflict with a substance abuse instructor.

5

After reaching out to a social worker for help to enroll in another program, and not feeling that the social worker was acting quickly enough, mother enrolled herself in an inpatient substance abuse program in November 2022. Mother testified that she planned to stay with this program on an outpatient basis, hoping she could stay in the inpatient portion of the program for another month. Mother also noted that once she completed the program, they would help her find housing for her and her children.

On cross-examination, mother admitted she had only been sober since December 28, 2022, when she entered the inpatient portion of the program. Mother also admitted she did not maintain visits with her children between November 2022 and January 2023, blaming the lack of transportation and the inpatient program. Mother, however, reiterated her belief that the main reason she lost custody of her children was due to the lack of housing.

After the juvenile court terminated family reunification services on March 3, 2023, mother filed her section 388 petition, stating she enrolled in two parenting classes, and was successfully completing the residential substance abuse program she was already enrolled in. Mother further stated she enrolled in an "intensive outpatient program," visited with her children consistently, and drug tested three times per week.

## DISCUSSION

### I. The Right to Appeal the Denial of the Section 388 Petition Has Been Adequately Preserved

Although only three of her children were named in the notice of appeal, suggesting mother was challenging the permanency plan for those three children, mother states in her opening brief that she only challenges the denial of her section 388 petition as it applied to M.V.1 and M.V.2. While the notice of appeal does not specifically name those two children, it does list the June 12, 2023 order denying the section 388 petition without a hearing.

6

Pursuant to California Rules of Court, rule 8.405(a)(3), "[a] notice of appeal must be liberally construed, and is sufficient if it identifies the particular judgment or order being appealed." Because the notice of appeal filed in this case lists the order from June 12, 2023, denying her section 388 petition, we conclude mother has preserved her right to appeal that order naming all five children. Her choice to now limit her appeal to only her two sons, who were not found to be adoptable and were placed into long-term foster care, is allowed to proceed.[3]

## II. The Section 388 Petition

### A. Standard of Review

> "A juvenile court dependency order may be changed, modified, or set aside at any time. (§ 385.) A parent may petition the court for such a modification on grounds of change of circumstance or new evidence. (§ 388, subd. (a).) The parent, however, must also show that the proposed change would promote the best interests of the child. (§ 388, subd. (a)(2).)" (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.)

The best interests of a child should not delay decisions about permanent placements and stability in order to reward a parent for "hard work and efforts to reunify." (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.) "The change in circumstances supporting a section 388 petition must be material." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120.) The court may deny the petition without holding an evidentiary hearing if it believes a prima facie showing has not been made. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) A petition does not meet the prima facie standard unless the facts alleged in the petition, once supported by relevant evidence, would support a favorable decision on the petition. (*In re J.P.* (2014) 229 Cal.App.4th 108,

---

[3] By order of this court, the juvenile court case Nos. identified in the notice of appeal (case Nos. 21CEJ300368–2, 4, 5), shall be amended to also include the specific case Nos. assigned to mother's 388 petition (case Nos. 21CEJ300368—l, 2, 3, 4, 5), which is the subject of this appeal.

127.) "[When] determining whether a parent has made a prima facie showing under section 388, we may consider the entire factual and procedural history of the case." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 711.)

A juvenile court's decision to either grant or deny a petition to modify a previous order involves the exercise of discretion, which will not be overturned absent a clear abuse of that discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

> " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

## B.     Application

In her section 388 petition, mother sought to have family reunification services reinstated. Again, for purposes of this appeal, this request would only extend to reunification services for M.V.1 and M.V.2. In her petition, mother stated she:

> "has completed two parenting classes, residential treatment at [a facility], earned a phase two in [a] residential treatment program and a certificate of acknowledgement for going above and beyond .… Mother is enrolled in [an] intensive outpatient program, visits consistently with her children and continues to drug test three times per week .…"

Mother further noted she was currently living in a sober living program and that the best interests of her children would be promoted by reinstating family reunification services because of the positive emotional attachment they all shared. Attached to the section 388 petition were several certificates and progress reports, mostly for programs completed between March and May 2023.

We note that while these achievements are significant, we must also consider "the entire factual and procedural history of the case." (See *In re Daniel F.*, *supra*, 64 Cal.App.5th at p. 711.) Mother has had a long-term problem with substance abuse, going as far back as 2010, when she received family maintenance services including

8

substance abuse treatment. Even after her children were removed from her custody in October 2021, mother enrolled in an outpatient program, but relapsed more than once while enrolled in that program. In fact, while testifying at the review hearing on March 3, 2023, mother admitted she was still learning about the various situations that would "trigger" relapses during her recovery. Moreover, as recently as the period between November 2022 and January 2023, mother failed to visit her children, partially blaming that failure on a lack of transportation.

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability ….' " (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The section 388 petition was filed only three months after the March 3, 2023 hearing, at which time the juvenile court heard evidence of mother's progress with sobriety and her failure to maintain consistent and meaningful visitation with her children. Given these facts, the court likely concluded the actions taken by mother during April and May were not material, as they established, at most, "changing" circumstances rather than "changed" circumstances. (See *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615; see also *In re A.S.* (2009) 180 Cal.App.4th 351, 358.) We cannot conclude based on the record that was already before the court that there was any abuse of its discretion when it denied the section 388 petition without holding a hearing. (See *Stephanie M.*, at pp. 318–319.)

Interestingly, mother relies on the case of *In re Aljamie D.* (2000) 84 Cal.App.4th 424 for the proposition that she was entitled to a full evidentiary hearing on her section 388 petition. However, the holding in *Aljamie D.* is completely distinguishable because the facts presented in that case showed the mother there had made changes over a long period of time. (*Id.* at p. 432.) Such is not the case here. The facts presented in the section 388 petition and the record already before the court did not

provide a sufficient record that mother actually "changed" and could now provide permanency and stability to her children. However, because M.V.1 and M.V.2 are in long-term foster care, the principles set out in the *Aljamie D.* case may prove useful to mother in the future. (See *Aljamie D.*, at pp. 427–429.)

## DISPOSITION

The order denying mother's section 388 petition is affirmed.